[No. 2367]

## STATE OF NEVADA, EX REL. GEO. B. THATCHER, ATTORNEY-GENERAL, RESPONDENT, v. THE RENO BREWING COMPANY (INCORPORATED), APPELLANT.

[178 Pac. 902]

1. STATUTES—GIVING EFFECT TO ALL PARTS—PRESUMPTION.

The presumption is that the framers of an act intended to give force and effect not only to the main legislative intent, but also to its several parts, words, clauses, and sentences.

2. STATUTES—FORCE AND EFFECT OF ALL PARTS OF STATUTE—PRESUMPTION.

The presumption that the framers of an act intended not only to give effect to the main legislative intent, but also to its several parts, words, clauses, and sentences, is removed only when it appears that effect cannot be given to the paramount purpose unless particular words or clauses are rejected or without limiting or expanding their literal import.

3. INTOXICATING LIQUORS—RESTRICTING OR ENLARGING MEANING OF STATUTE.

The sentence, "and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this act," in prohibition law, sec. 1, cannot be adjudged out of the act, or restricted or enlarged in its plain signification, unless, after exhausting every legitimate method of construction, it is found irreconcilable with the scope and purpose of the act or void for constitutional reasons.

4. INTOXICATING LIQUORS—"MALT LIQUOR."

"Sierra Beverage," containing malt and one-tenth per cent alcohol, is, whether intoxicating or not, a liquor, within prohibition law, sec. 1, providing that "all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this act."

5. INTOXICATING LIQUORS—EXPRESS MENTION AND IMPLIED EXCLU-
   SION.
   The phrase, "any other intoxicating drink, mixture or
   preparation of like nature," which follows the specific enu-
   meration of certain named liquors in prohibition law, sec. 1,
   instead of limiting the class of liquor enumerated, described
   another merely by their intoxicating quality.

6. INTOXICATING LIQUORS—STATUTE—CONSTRUCTION.
   The phrase, "any other intoxicating drink, mixture or
   preparation of like nature," which follows the specific enumer-
   ation of certain named liquors in prohibition law, sec. 1, is not
   controlled or qualified by the last clause of said section with
   reference to beverages containing one-half per cent alcohol
   being spirituous liquors.

7. INTOXICATING LIQUORS—STATUTE—CONSTITUTIONALITY.
   Prohibition law, sec. 1, providing that "all malt or brewed
   drinks, whether intoxicating or not, shall be deemed malt
   liquors within the meaning of this act," does not contravene
   the state or federal constitution.

8. INTOXICATING LIQUORS—SUPPRESSING NONINTOXICATING LIQUORS.
   The power exercised through appropriate legislation by the
   legislature, or people acting in a legislative capacity, to sup-
   press nonintoxicating liquors, is established beyond question,
   such power being incidental to the power to entirely prohibit
   traffic in, and consumption of, intoxicating liquors.

9. INTOXICATING LIQUORS — COMMON NUISANCE — INJUNCTION —
   "LIQUORS."
   The term "intoxicating liquors," as used in prohibition law,
   sec. 14, making place where such liquors are manufactured,
   stored, sold, etc., public nuisances, is, when said section is con-
   sidered together with sections 6 and 17, to be taken as used
   interchangeably with the word "liquors" in section 1, and dis-
   trict court had jurisdiction to enjoin defendant brewing com-
   pany from manufacturing and selling "Sierra Beverage,"
   although said beverage is not intoxicating.

APPEAL from Second Judicial District Court, Washoe
County; *Thomas F. Moran,* Judge.

Action by the State, on relation of Geo. B. Thatcher,
Attorney-General, against the Reno Brewing Company,
Incorporated. From an order granting an injunction
pendente lite, defendant appeals. **Order of Supreme
Court modifying injunction vacated and set aside, and
injunction as originally granted continued in full force
and effect.**

*James T. Boyd,* and *Harlan L. Heward,* for Appellant:

Before the injunction was issued by the lower court, it
should have clearly appeared from the complaint that

the liquor complained of as being manufactured was an intoxicating liquor; and if it did not so appear, the court was without jurisdiction or power to issue the injunction, and the same should be set aside.

The beverage in question contains one-tenth of one per cent of alcohol by volume, and it is not an intoxicating liquor. "The existence of a right violated is a prerequisite to the granting of an injunction. Where it is clear that the complainant does not have the right that he claims, he is not entitled to an injunction, either temporary or perpetual, to prevent a violation of such supposed right." 22 Cyc. 749. Unless the malt liquor contains alcohol, it is not a malt liquor. "The mere fact that a liquid contains malt does not bring it within any definition of the words 'malt liquor,' which can be found in any recognized dictionary, text-book, or definition given by any court." State v. Hemrich, 161 Pac. 81. "* * * It seems to me that the quantity of alcohol in this drink is too negligible to be classed as an alcoholic drink." Fuller v. Jackson, 30 L. R. A. 1078.

The statute should be given a construction that will carry out the intention of the legislature. The court should look to the evil that was intended to be remedied, and give such a fair and just interpretation to the statute as will effect the purpose of the enactment. The title of the act may be used very properly in arriving at the intention or spirit of the act. A fair interpretation would be that it was an effort on the part of the legislature to prohibit the sale, gift or barter of liquors which the court would take judicial notice of as being intoxicating, or which might be shown as a matter of fact to be intoxicating. This seems obvious from the use of the words "and other intoxicating drinks, mixtures, or preparations." "I do not think the legislature can prohibit the sale or use of any article whose sale or use involves no danger to the general public. * * * The food, the drink, the life of the individual * * * can be abridged or changed by the majority speaking through the legislature only when the public safety,

the public health, or the public protection requires it. * * * . But the legislature never intended such a sweeping prohibition. The use of intoxicating liquors as a beverage was the evil, and the statute must be read in the light thereof." Intoxicating Liquor Cases, 37 Am. Rep. 284.

The act specifies the quantity of alcohol that is considered deleterious, and prohibits the sale of certain liquors on account of their alcoholic content. An interpretation that would stretch the prohibition any farther would go beyond the spirit of the act and the legislative intent as expressed therein. "It is not believed that the. law, or lawmakers or electors, intended to permit the sale of one kind of liquor which contained less than one per cent alcohol, and to permit the sale of another and equally harmless liquor (malt) which contained no greater quantity of alcohol. * * * A statute should receive such consideration, if possible, without doing violence to its terms, as will render its provisions consistent and in harmony with each other, and at the same' time give effect to the real purpose and intent of the enactment," People v. Strickler, 25 Cal. App. 67; City of Bowling Green v. McMullen, 122 S. W. 823.

*L. B. Fowler,* Attorney-General, and *Geo. B. Thatcher,* for Respondent.

*Brown & Belford,* Amici Curiæ:

The prohibition act is to be regarded as an exercise of the police power of the state. It is to be liberally construed, so that its purposes may be attained and effectively accomplished. The regulation of the liquor traffic has always been within the recognized power of the state as a means of promoting the public health, safety, and welfare. Section 23 of the act expressly recognizes this and provides its own rule of interpretation. Such a statutory declaration is not uncommon, and it removes the act from the strict construction that

is applied to penal statutes.   State v. Hemrich, 161
Pac. 81.

The police power of the state over the liquor traffic
and its incidents is plenary; it extends to its complete
and absolute prohibition.   Its exercise does not contra-
vene any of the guaranties of the state or federal con-
stitution.   Purity Extract Co. v. Lynch 226 U. S. 192,
57 L. Ed. 187; Eiger v. Garrity, 38 Sup. Ct. Rep. 300;
In Re Crane, 151 Pac. 1006; Clark Dist. Co. v. Western
Maryland Co., 242 U. S. 311; State v. Hemrich, supra.

The right to prohibit the sale, manufacture or use of
intoxicating liquors includes the right to employ such
means, methods, or agencies as have any reasonable
relation to the main or dominating purpose of the act.
Purity Extract Co. v. Lynch, supra; Freund, Police
Power, sec. 220.

The so-called "near-beers" have been recognized by
the courts as one of the most obvious means that could
be adopted to facilitate the evasion and violation of the
prohibitory laws.   Ex Parte Lockman, 110 Pac. 255;
State v. Danneberg, 66 S. E. 301; Brown v. State, 152
Pac. 580.

If the liquor comes within the definition of the pro-
hibited beverages, as set forth by the legislature, the
fact that it is nonintoxicating may not exempt it from
the act.   23 Cyc. 57, 58; People v. Kinhey, 83 N. W. 147;
State v. Intoxicating Liquors, 41 N. W. 6;   State v.
O'Connell, 58 Atl. 60; Fuller v. Jackson City, 52 South.
876; Douglas v. State, 52 N. E. 238;   State v. Freder-
ickson, 63 Atl. 535; Pennell v. State, 123 N. W. 115;
Ex Parte Lockman, supra.   Medicinal preparations,
cooking essences, and the like, have a distinctive mean-
ing that has been recognized by the courts as exempting
them from the operation of the prohibitory laws.   23
Cyc. 58; Freund, Police Power, sec. 221.

The expression "any other intoxicating drink" is not
intended to limit the class which precedes it, but to add

another class of liquors, not specifically enumerated, to the prohibition of the act.   State v. Hemrich, supra.

*Arthur F. Lasher,* Amicus Curiæ:

A statute prohibiting the sale of malt liquors should be construed to prohibit the sale of nonintoxicating liquors, and the amount of alcohol contained in said malt liquors is immaterial.   State v. Lebrecque, 97 Atl. 747;   State v. York, 74 N. H. 125;   Moss v. State, 4 Okl. Crim. 247;   Etter v. State, 4 Okl. Crim. 237;   Bradshaw v. State, 76 Ark. 562;   Siebert v. State, 121 Ark. 258; Purity Co. v. Lynch, 56 South. 316;   Reyfelt v. State, 73 Miss. 415;   Edwards v. City, 95 Miss. 148;   Fuller v. City of Jackson, 97 Miss. 237;   Sawyer v. Botti, 27 L. R. A. 1007;   State v. Stickle, 151 Iowa, 303;   Berner v. McHenry, 169 Iowa, 483;   Feibelman v. State, 130 Ala. 122;   Dinkins v. State, 149 Ala. 49;   Lambie v. State, 151 Ala. 86;   State v. Frederickson, 101 Me. 37;   Luther v. State, 120 N. W. 125;   People v. Nordine, 201 Ill. App. 70.

By the Court, DUCKER, J.:

This is an appeal from an order of the district court granting an injunction pendente lite, enjoining the appellant, the Reno Brewing Company, from keeping or maintaining a building or buildings at or in the vicinity of 990 East Fourth Street, in Reno, Nevada, for the manufacturing, storing, selling, vending, or giving away or furnishing a malt or brewed drink commonly called "Sierra Beverage," or any other beverage or malt or brewed drink of like kind or character.

The action was instituted in the district court on the relation of Geo. B. Thatcher, the then attorney-general of Nevada, under sections 14 and 17 of the prohibition law of this state, which reads:

"SEC. 14.   All houses, buildings, club rooms and places of every description, including drug stores, where intoxicating liquors are manufactured, stored, sold or vended, given away, or furnished contrary to law (including those in which clubs, orders or associations sell, barter, give away, distribute or dispense intoxicating liquors to

their members, by any means or device whatever, as provided in section six of this act) shall be held, taken and deemed common and public nuisances. And any person who shall maintain, or shall aid or abet, or knowingly be associated with others in maintaining such common and public nuisance, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred nor more than one thousand dollars, and by imprisonment in the county jail not less than thirty days nor more than twelve months for each offense, and judgment shall be given that such house, building or other place, or any room therein, be abated or closed up as a place for the sale or keeping of such liquors contrary to law, as the court may determine."

"SEC. 17. The commissioner, his agents and deputies, and the attorney-general, prosecuting attorney, or any citizen of the county where such a nuisance as is defined in section fourteen of this act exists, or is kept or maintained, may maintain a suit in equity in the name of the state to abate and perpetually enjoin the same, and courts of equity shall have jurisdiction thereof. The injunction shall be granted at the commencement of the action and no bond shall be required.  *  *  *"

Section 1 of said act provides as follows:

"SECTION 1. The word 'liquors' as used in this act shall be construed to embrace all malt, vinous or spirituous liquors, wine, porter, ale, beer or any other intoxicating drink, mixture or preparation of like nature; and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this act; and all liquids, mixtures or preparations, whether patented or not, which will produce intoxication, and all beverages containing so much as one-half of one per centum of alcohol by volume, shall be deemed spirituous liquors, and all shall be embraced in the word 'liquors,' as hereinafter used in this act."

In paragraph 3 of the complaint it is alleged that—

"Said defendant owns, operates, and maintains buildings within said city of Reno, county of Washoe, state

aforesaid, and at 990 East Fourth Street, where it manufactures, stores, and threatens to sell or vend, give away or furnish, contrary to law, certain malt or brewed drink, under the name of 'Sierra Beverage,' containing approximately one-tenth ($^1/_{10}$) of one per cent (1%) alcohol; and that said drink is what is commonly known and called 'near-beer'; that the manufacture and storing of said liquor is contrary to and in violation of sections 1 and 14, respectively, of that certain initiative act adopted by the people of the State of Nevada at the last general election, entitled 'An act to prohibit the manufacture, sale, keeping for sale, and gift, of malt, vinous and spirituous liquors, and other intoxicating drinks, mixtures or preparations; making the superintendent of the Nevada state police ex officio commissioner of prohibition, and defining his duties; and providing for the enforcement of this act, and prescribing penalties for the violation thereof.' "

The manufacture or sale, etc., of malt liquors is prohibited by the act as indicated in the title. By section 1 "The word 'liquors' as used in this act shall be construed to embrace all malt * * * liquors, * * * and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors. * * *"

The manufacture or sale of liquors is prohibited in the two succeeding sections.. The prohibition is complete whether the clause in section 1, "and all shall be embraced in the word 'liquors,' as hereinafter used in this act," was intended to include the entire classification of liquors in this section or not, or refers only to spirituous liquors.

Appellant contends that "Sierra Beverage" is not a liquor within the meaning of section 1, and not prohibited by the provisions of the act, for the reason that it is nonintoxicating and contains only about one-tenth of 1 per centum of alcohol.

In support of this contention it was urged in the oral argument and in the briefs that the manifest purpose

of the act is to prohibit the manufacture, sale, and gift only of beverages or drinks that will produce intoxication, and such as the courts will take judicial notice of as intoxicating, and that class of beverages included in the last clause of section 1 which contain "so much as one-half of one per centum of alcohol by volume."

To give the act the construction claimed by appellant we must ignore as meaningless the clause in section 1, "and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this act."

1. The presumption is that the framers intended to give force and effect, not only to the main legislative intent of the act but also to its several parts, words, clauses, and sentences, and chose appropriate language to express their intention.

2. This presumption is removed only when it appears, from a construction of a statute as a whole, effect cannot be given to the paramount purpose unless particular words or clauses are rejected, or without limiting or expanding their literal import.

3. In the application of this principle the sentence, "and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this act," cannot be adjudged out of the act, or restricted or enlarged in its plain signification, unless, after exhausting every legitimate method of construction, it is found irreconcilable with the scope and purposes of the act, or void for constitutional reasons.

As pointed out in State v. Hemrich, 93 Wash. 439, 161 Pac. 79, L. R. A. 1917B, 962, the definitions of the term "malt liquor," as given in the standard dictionaries and by all law lexicographers, include the elements of malt and alcohol without regard to the proportions of these constituents. There is almost the same uniformity in the definitions of the courts which have attempted to define the term.

They recognize the presence of malt and alcohol as

essential elements of malt liquor, or, as in State v. Hemrich, supra, such properties including malt that will generate alcohol.

4. It is alleged in the complaint and admitted by appellant that "Sierra Beverage" contains malt and alcohol, and thus it is brought squarely within the meaning of these definitions as a malt liquor. Whether it is intoxicating or not is made immaterial by the language of section 1, declaring malt and brewed drinks to be malt liquors, unless it was not intended to give this clause its apparent effect.

The title of the act purports to prohibit the manufacture, sale, keeping for sale, and gift of malt, vinous, and spirituous liquors, and in the first part of section 1 liquors prohibited by the act are construed to embrace all malt, vinous, or spirituous liquors, wine, porter, ale, beer or any other intoxicating drink, mixture, or preparation.

5. It is urged that the general phrase in the title and in section 1 as to other intoxicating drinks, which follows specific enumeration of liquors, shows an intent to prohibit only such liquors as the courts will judicially notice as intoxicating, and liquors which might be shown to be in fact intoxicating. We think that the phrase, "any other intoxicating drink, mixture or preparation of like nature," which follows the specific enumeration of all malt, vinous, or spirituous liquors, wine, porter, ale, or beer, instead of limiting this class, describes another class merely by their intoxicating quality. In this conclusion we are sustained by ample authority construing similar construction of language. See State v. Hemrich, 93 Wash. 439, 161 Pac. 79, L. R. A. 1917B, 962, and cases cited.

The prohibition law is a late enactment in this state, and apparently framed with extreme care to prevent evasions and to enforce its primary object. Doubtless, due regard was paid to the prohibition laws of other states and the decisions of the courts upon them in framing the measure.

An extensive view of the earlier as well as the later

decisions construing prohibition statutes which forbid the sale of a certain class of liquors reveals a conflict of authority on the question of whether nonintoxicating liquors of that class are included. The weight of authority is on the side of their prohibition, but still there is a conflict. Suppose the clause we are considering were not in our prohibition law. Under this posture of the cases there would be room for different constructions. What set of words, then, could be more designed to eliminate this question than the language, "all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this act"? It performs the function of clarifying any doubtful construction of the preceding language in the statute as to malt liquors.

6. It is not controlled or qualified in its meaning by the last clause in section 1, "and all beverages containing so much as one-half of one per centum of alcohol," etc., for it is apparent that this language defines spirituous liquors, whether such beverages are intoxicating or not, provided they contain the stated per centum of alcohol. There is no conflict whatever between the two clauses. They relate to distinct classes of forbidden liquor, namely, malt liquor and spirituous liquor. This plain inclusion of nonintoxicating malt liquor is not inconsistent with any part of the act, nor with its spirit and purpose. The ultimate object of the prohibition law is to prevent drunkenness and its consequent evils. To effect this end, traffic in liquors included in that term in section 1 are prohibited. While nonintoxicating malt liquor is in itself harmless, except in so far as it may create an appetite for intoxicating drinks, yet, as stated in Purity Extract and Tonic Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184, the legislation of other states, and the decisions of the courts in its construction, show that the opinion is extensively held that a general prohibition of the sale of malt liquors, whether intoxicating or not, is a very necessary means to the suppression of trade in intoxicants.

7. We believe that this opinion so "extensively held"

is. the reason for the inclusion of the clause, "and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this act," in the prohibition law of this state, and was inserted to prevent evasions of the act. That nonintoxicating beverages other than the one proscribed may also be used for the purposes of evasion is a subject for legislative discretion, and their omission from the statute makes no ground for an argument that the one plainly included was not intended. The clause complained of does not contravene the state or the federal constitution.

8. The power exercised through appropriate legislation, by the legislature or people acting in a legislative capacity, to suppress nonintoxicating liquors, is now so generally recognized by the courts as to be beyond question. Purity Extract and Tonic Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184; Purity Extract and Tonic Co. v. Lynch, 100 Miss. 650, 56 South. 316; Kunsberg v. State, 147 Ga. 591, 95 S. E. 12; State v. Hemrich, 93 Wash. 439, 161 Pac. 79, L. R. A. 1917B, 962; State v. Frederickson, 101 Me. 37, 63 Atl. 535, 6 L. R. A. (N. S.) 186, 115 Am. St. Rep. 295, 8 Ann. Cas. 48; Pennell v. State, 141 Wis. 35, 123 N. W. 116.

It is incidental to the power to entirely prohibit traffic in, and consumption of, intoxicating liquors, for the reason that the right to enact such legislation necessarily carries with it the power to adopt all means, having any reasonable relation thereto, that the legislative body may deem necessary to enforce the dominant purpose of a prohibition measure. The conceded power of the state to preserve the welfare, health, and morals of the people by forbidding the use of intoxicating liquors, would be only a "barren scepter in its gripe," without the power to prohibit the use of all nonintoxicating liquors which may be generally and conveniently used to render prohibitory laws nugatory by evasion.

In Purity Extract and Tonic Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184, the court said:

"The statute establishes its own category. The question in this court is whether the legislature had power to establish it. The existence of this power, as the authorities we have cited abundantly demonstrate, is not to be denied because some innocent articles or transactions may be found within the proscribed class. The inquiry must be whether, considering the end in view, the statute passes the bounds of reason, and assumes the character of a merely arbitrary fiat. That the opinion is extensively held that a general prohibition of the sale of malt liquors, whether intoxicating or not, is a necessary means to the suppression of trade in intoxicants, sufficiently appears from the legislation of other states and the decision of the courts in its construction. [Citing cases.] We cannot say that there is no basis for this wide-spread conviction. The state, within the limits we have stated, must decide upon the measures that are needful for the protection of its people, and, having regard to the artifices which are used to promote the sale of intoxicants under the guise of innocent beverages, it would constitute an unwarrantable departure from accepted principle to hold that the prohibition of the sale of all malt liquors, including the beverage in question, was beyond its reserved power."

It follows from what we have said that the "Sierra Beverage," which, as its name signifies, is a beverage, and contains alcohol and malt, is prohibited by the statute.

9. Appellant insists that the lower court had no jurisdiction to enjoin it from the manufacture or sale of "Sierra Beverage" for the reason that it was neither alleged in the complaint nor proven that the "Beverage" is an intoxicating liquor.

The contention is based on section 14, wherein the places which shall be deemed common and public nuisances are designated as those where "intoxicating liquors" are manufactured, stored, sold, including those places where the same are dispensed to members of

clubs or associations mentioned in section 6. The effect of section 1 is to place all liquors therein mentioned, whether intoxicating or not, in the category of intoxicating liquors for the purpose of the act.

In some of the succeeding sections the word "liquors" is used, and in others the term "intoxicating liquors"; but it seems clear that in each instance reference is made to all of the liquors included in section 1, for otherwise the traffic in spirituous liquor containing so much as one half of 1 per centum of alcohol by volume could not be prevented.

Our conclusion in this regard is strengthened when section 14 is considered together with sections 6 and 17.

In section 6 the places banned, and made subject to actions for abatement as nuisances by virtue of section 14, are places where, in the language of the section, liquors are dispensed to members of clubs and associations. The word "intoxicating" is not found in this section, and it is likewise omitted in section 17. In the second paragraph of this section provision is made for the judgment that shall be ordered when the court finds the material allegations of the complaint true in a case of this kind. It provides, in effect, that the judgment of abatement shall prohibit liquors from being "sold, bartered, given away, distributed, dispensed or stored in" the house or place found to be a common and public nuisance. If it were intended, as appellant insists, that only intoxicating liquors were meant in section 14; then it would seem most reasonable to conclude that provision would have been made for the judgment to follow the finding in this regard.

A consideration of the entire act, and its scope and purpose, convinces us that the term "intoxicating liquors," as used in section 14, is to be taken as used interchangeably with the word "liquors," in section 1, and that the district court had jurisdiction to grant the injunction.

The order of the district court granting the injunction is affirmed.

The order of this court modifying the injunction is vacated and set aside, and the injunction as originally granted is continued in full force and effect.