No. 2588

# EX PARTE SLOAN

July 14, 1923.                    217 Pac. 233.

1. INTOXICATING LIQUORS—ELIMINATION OF CHARTER PROVISIONS IN AMENDMENT HELD DONE TO REMOVE CONFLICT WITH STATUTE.

   The amendment of Reno charter in 1921 (Stats. 1921, c. 33), eliminating power of the city council to license, regulate, and limit the liquor traffic, made such elimination to remove conflicts with the state prohibition law, and not to withhold power to prohibit sale or disposal of intoxicating liquor by ordinance.

2. INTOXICATING LIQUORS—CITY HAS IMPLIED POWER TO REGULATE LIQUOR TRAFFIC.

   In the absence of any express charter authority or any express prohibition of authority to regulate the manufacture, sale, etc., of intoxicating liquors, the city of Reno has implied authority to do so under the general-welfare clause of the charter (Stats. 1921, c. 33), which is based on the police power, in view of Stats. 1919, c. 1, sec. 23.

3. CONSTITUTIONAL LAW — LEGISLATURE MAY DELEGATE POLICE POWER UNDER GENERAL GRANT.

   The legislature may delegate to municipal corporations the lawful exercise of police powers within their boundaries.

4. MUNICIPAL CORPORATIONS — CHARTER GENERAL-WELFARE CLAUSE MAY SUPPLY OMITTED POWERS.

   If the power to pass ordinances upon any subject is specifically given, the power so granted cannot be enlarged or changed by a general clause of the charter, but, if the subject is omitted altogether in the specific powers, authority to pass ordinances upon the omitted subject may be conferred under the general clause.

5. MUNICIPAL CORPORATIONS—STATE AND CITY MAY LEGISLATE ON SAME SUBJECT.

   The same act may constitute both an offense against the state and a municipal corporation, both of whom may punish without violation of any constitutional principle.

6. INTOXICATING LIQUORS—VIOLATION OF STATE LIQUOR LAW PUNISHABLE BY BOTH STATE AND MUNICIPALITY.

   The keeping for sale or other disposal of intoxicating liquors denounced by the Reno charter falls within the category of acts which may be prohibited and punished by statute and ordinance simultaneously.

7. CRIMINAL LAW—PENAL STATUTE AND ORDINANCE COVERING SAME OFFENSE DO NOT CONSTITUTE DOUBLE JEOPARDY.

   An ordinance penalizing the sale, manufacture, etc., of intoxicating liquors, also prohibited by statute, is not within the constitutional inhibition against double jeopardy, because conditions ordinarily prevailing in populous centers constitute it a distinct offense against the city.

8. JURY—SUMMARY PROCEEDINGS FOR PETTY OFFENSES HELD NOT UNCONSTITUTIONAL DENIAL OF "JURY TRIAL."

Denial of jury trial for petty offenses under city ordinance, where summary proceeding is expressly authorized by Stats. 1905, c. 71, art. 14, sec. 3, and had been the practice at common law prior to the adoption of the several constitutions, does not violate the constitutional right to jury trial, since the term "jury trial" is defined by the common law.

9. JURY—COMMON-LAW RULES SURVIVED THE CONSTITUTION.

If in a given class of offenses trials without a jury were formerly the prevailing rule, the constitution did not change the rule.

10. CONSTITUTIONAL LAW—ONE NOT INJURED BY AN ACT MAY NOT COMPLAIN OF UNCONSTITUTIONALITY.

The petitioner cannot complain that the penalty authorized by the ordinance under which he was convicted was unconstitutional because in excess of that authorized by statute, where the penalty imposed was within the statutory maximum for the same offense, as in such case he is not injured.

ORIGINAL APPLICATION of Charles Sloan for a writ of habeas corpus. **Writ dismissed.** (SANDERS, J., dissenting.)

*M. B. Moore*, for Petitioner:

Municipal powers are either expressly granted, necessarily implied, or indispensable (not merely convenient). 1 Dillon, Mun. Corp. (4th ed.), secs. 89, 91; Meagher v. County of Storey, 5 Nev. 196.

Ambiguity as to powers is determined in favor of state and against state's grantee. 1 Dillon, sec. 91. Courts adopt a strict rather than liberal construction of municipal powers. Minturn v. Larue, 23 How. 435; 1 Dillon, secs. 315, 316.

A by-law of city in relation to sale of intoxicating liquor is invalid, as contravening special provisions of charter, and therefore not sustainable under general-welfare clause of charter. State v. Ferguson, 33 N. H. 424.

An ordinance making that which is a crime under general law an offense against the town, held to be void. In Re Sic, 14 Pac. 405; 1 Dillon, secs. 433–436, and note 2, page 503. Unless by express legislative authority conferring jurisdiction. Moran v. Atlanta,

30 S. E. 298. Though authorities on subject are in hopeless conflict. 29 Cyc. 699; 45 Am. Rep. 420.

Only violations of municipal police regulations may be tried summarily; in all other cases citizen has right to trial by jury. Callan v. Wilson, 32 U. S. (L. Ed.) 223.

*LeRoy F. Pike,* for Respondent:

The police power of municipal corporation extends to all matters affecting peace, order, health, morals, convenience, comfort, and safety of its citizens. The general-welfare idea is expanding rapidly. Recent judicial decisions are giving greater power to public authorities. 3 McMillan, Mun. Corp. 1884.

City may control intoxicants under general-welfare clause. Idem, sec. 890; 2 Dillon, Mun. Corp., secs. 671, 673; In Re Bond, 107 Pac. 143. That cities have such power is no longer open question. State v. Calloway, 84 Pac. 27. Even though the state has general statutes on same subject. Summers v. Oklahoma, 112 Pac. 951.

The legislature intended that cities should enact measures necessary to put prohibition act into effect. 3 Rev. Laws, sec. 26, p. 2829.

The state and its municipalities may act concurrently. 28 Cyc. 368; Ex Parte Counts, 39 Nev. 61. The decisions are conflicting, but the rule prevails in twenty-eight states and in the United States court. McMillan, supra, sec. 878; In Re Jahn, 41 Pac. 956; Guidoni v. Wheeler, 230 Fed. 93.

Municipal ordinances may make punishment greater than statute. Kansas City v. Kearne, 153 Pac. 548. Or less. Ex Parte Kinney, 200 Pac. 966.

Infractions of police ordinances may be tried without jury. State v. Ruhe, 24 Nev. 251. If appeal is not unreasonably restricted. 2 Dillon, sec. 756; Cranor v. City of Albany, 71 Pac. 1042.

The title of the ordinance is sufficient. Ex Parte Cerfoglio, 46 Nev. 332.

By the Court, DUCKER, C. J.:

This is an original proceeding in habeas corpus. The

return to the writ shows that petitioner was convicted in the municipal court of the city of Reno for the violation of section 2 of Ordinance No. 299 of said city, and sentenced to pay a fine of $500 or serve one day in the city jail of the city of Reno for each dollar of the fine remaining unpaid.

From the judgment of the municipal court petitioner appealed to the Second judicial court of the State of Nevada, in and for the county of Washoe. Petitioner was tried in said district court before the court sitting without a jury, found guilty, and sentenced to pay a fine of $100, in default of which it was adjudged that he be confined in the city jail of the city of Reno, Washoe County, Nevada, for a period not to exceed one day for each dollar of said fine remaining unpaid. In default of the payment of the fine petitioner was remanded to the custody of the chief of police of said city of Reno, to be incarcerated in the said city jail. On the issuance of the writ from this court petitioner was admitted to bail.

Section 2 of the city ordinance under which petitioner was charged, tried, and convicted, reads as follows:

"It shall be unlawful for any person, firm, association, or corporation to manufacture, keep or store, sell, or otherwise dispose of, except as hereinafter provided, any intoxicating liquors in the city of Reno; provided, that nothing in this ordinance shall prohibit the manufacture, sale, keeping, or storing of said liquors where the manufacture, sale, keeping, or storing of the same is permitted by the laws of the State of Nevada, or of the United States of America."

In respect thereto petitioner contends that the city of Reno is without power to pass or enforce any ordinance relating to the subject or subjects mentioned therein, because the authority so to do has not been granted in its charter.

1, 2. It is pointed out that the charter of 1917 of the city of Reno contained certain provisions empowering the city council to license, regulate, and limit places where intoxicating liquors were sold or given away, which were eliminated when the legislature amended

the said charter act in 1921. From this it is urged that the legislature, in thus amending the charter, had under consideration the question as to whether or not power should be given to the city council to enact any ordinance governing the licensing, regulating, or prohibiting the manufacture or sale of intoxicating liquors, and did not intend to grant the city council any power in regard to these subjects. We do not agree with this view. The provisions eliminated pertained to the licensing or regulating of places where intoxicating liquors were sold or given away, and were in conflict with the state prohibition law enacted in 1919, which prohibited the manufacture, sale, keeping, or storing for sale in this state, or offering or exposing for sale of intoxicating liquors in the state. Stats. 1919, p. 1. It is clearly evident that these provisions were removed from the charter act by the legislature of 1921 for this reason, and we perceive nothing in the amendment from which to indulge an inference that it was intended to withhold from the city council the power to legislate by ordinance in regard to prohibiting the sale or disposal of intoxicating liquors within the limits of the city of Reno. It is true this authority is not expressly granted by the charter. Counsel for the respondent concedes so much, and claims that the authority has been given to the municipality under the general delegation of powers appearing in the charter in what is designated as the general-welfare clause. This clause reads as follows:

"To adopt and enforce by ordinance, all such measures and establish all such regulations in case no express provision is in this charter made, as the city council may from time to time deem expedient and necessary for the promotion and protection of health, comfort, safety, life, welfare, and property of the inhabitants of said city, the preservation of peace and good order, the promotion of public morals and the suppression and prevention of vice in the city, and to pass and enact ordinances on any other subject of municipal control or to carry into force or effect any other powers of the city, and to do and perform any, every, and all acts and

things necessary or required for the execution of the powers conferred or which may be necessary to fully carry out the purpose and intent thereof." Stats. 1921, p. 56.

3. This clause of the charter contains a delegation of police powers. It is well settled that the legislature may delegate to municipal corporations the lawful exercise of police powers within their boundaries, and do so under a general grant. 28 Cyc. 705, and cases cited; 19 R. C. L. pp. 798, 799; Cooley's Municipal Corp. p. 313; 3 McQuillin, Mun. Corp., sec. 895; City of Helena v. Kent, 32 Mont. 279, 80 Pac. 258, 4 Ann. Cas. 235; Crum v. Bray, 121 Ga. 709, 49 S. E. 686, 1 Ann. Cas. 991; Village of Fairmont v. Mayer, 83 Minn. 456, 86 N. W. 457; Commonwealth v. Cutter, 156 Mass. 52, 29 N. E. 1146.

It is unnecessary to adduce or cite authority in this case to show that the prohibition of the sale of intoxicating liquors is comprehended within the scope of police powers. Legislation of this character was declared to be the exercise of such power by the people and legislature of this state (section 23, Stats. 1919, p. 11), and was a legitimate exercise thereof. State v. Reno Brewing Co., 42 Nev. 397, 178 Pac. 902.

4. There is nothing in the charter act to indicate that the legislature intended to withhold this portion of its police power from being exercised by the city of Reno, and the preservation of the health, comfort, good order, safety, morals, and welfare of the people is within the ordinary scope of municipal authority. A rule deducible from ample authority, which we think should be given application here, is, if the power to pass ordinances upon any subject is specifically given, the power so granted cannot be enlarged or changed by the general clause; but, if the subject is omitted altogether in the specific powers, authority to pass ordinances upon the omitted subject may be conferred under the general clause. The only restriction in the general - welfare clause upon the subjects pertaining to police power is in case express provision is made in the charter, and there

is no special provision in regard to the sale of intoxicating liquors. It seems, therefore, that the city council was clothed with ample authority to adopt the ordinance in question.

5. But counsel for petitioner contends that, the state having passed a general law prohibiting the manufacture and sale of intoxicating liquors fixing the degree of the offense, and providing the penalty therefor, the city council of Reno cannot pass or enact a valid ordinance governing the same subject-matter, and is without power to prosecute any person for the violation of any such ordinance. There is a conflict of authority upon this question. The decided weight of authority, however, is to the effect that the same act may constitute an offense both against the state and a municipal corporation. "Indeed," says Judge Cooley, in his work on Constitutional Limitations (7th ed.) p. 279, "an act may be a penal offense under the laws of the state, and further penalties, under proper legislative authority, be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other."

This principle was recognized in Ex Parte Siebenhauer, 14 Nev. 365. The trend of authority in this respect is thus stated in 28 Cyc., pp. 696–698:

"The legislature may confer police power upon a municipality over subjects within the provisions of existing state laws. Accordingly, unless it is prohibited by some express constitutional or statutory provision, by the great weight of authority municipal corporations may, by ordinance, prohibit and punish acts which are also prohibited and punishable as misdemeanors under the general statutes of the state, or which may involve a common-law offense."

"The power may be granted expressly or by implication." Id. 693.

As was said in City of Chicago v. Ice Cream Co., 252 Ill. 311, 96 N. E. 872, Ann. Cas. 1912D, 675, in which it was held that the fact that the state had legislated upon

a subject does not necessarily deprive a city of power to deal with the same subject by ordinance:

"Municipal corporations are bodies politic, vested with many political and legislative powers for local government and police regulations, established to aid the government by the state. The necessity for their organization may be found in the density of the population and the conditions incidental thereto. Because of this, the muncipal government should have power to make further and more definite regulations than are usually provided by general legislation and to enforce them by appropriate penalties."

The following additional authorities are among those sustaining the principle, which we think is more in consonance with good government, that the same act may be prohibited and punished by municipal and state law: Borok v. Birmingham, 191 Ala. 75, 67 South. 389, Ann. Cas. 1916c, 1061; Van Buren v. Wells, 53 Ark. 368, 14 S. W. 38, 22 Am. St. Rep. 214; Hunt v. Jacksonville, 34 Fla. 504, 16 South. 398, 43 Am. St. Rep. 214; Rossberg v. State, 111 Md. 394, 74 Atl. 581, 134 Am. St. Rep. 626; People v. Hanrahan, 75 Mich. 611, 42 N. W. 1124, 4 L. R. A. 751; People v. Detroit White Lead Works, 82 Mich. 471, 46 N. W. 735, 9 L. R. A. 722; State v. Walbridge, 119 Mo. 383, 24 S. W. 457, 41 Am. St. Rep. 663; Howe v. Treasurer of Plainfield, 37 N. J. Law, 145; Riley v. Trenton, 51 N. J. Law, 498, 18 Atl. 116, 5 L. R. A. 352; Rogers v. Jones, 1 Wend. (N. Y.) 237, 19 Am. Dec. 493; Brazier v. Philadelphia, 215 Pa. 297, 64 Atl. 508, 7 Ann. Cas. 548; Seattle v. MacDonald, 47 Wash. 298, 91 Pac. 952, 17 L. R. A. (N. S.) 49, and note on page 54; Hamilton v. State, 3 Tex. App. 463; In Re Thomas, 53 Kan. 659, 37 Pac. 171; Kansas City v. Henre, 96 Kan. 794, 153 Pac. 548; Theisen v. McDavid, 34 Fla. 440, 16 South. 321, 26 L. R. A. 234.

The power of a municipality to punish as a distinct offense an act which also constitutes an offense against the state may be included in the general powers conferred on the former. Thiesen v. McDavid, 34 Fla. 440, 16 South. 321, 26 L. R. A. 234; Borok v. City of Birmingham, 191 Ala. 75, 67 South. 389, Ann. Cas. 1916c,

1061; Seattle v. MacDonald, 47 Wash, 298, 91 Pac. 952, 17 L. R. A. (N. S.) 49; City of St. Louis v. Schoenbusch, 95 Mo. 618, 8 S. W. 791; City of Brownville v. Cook, 4 Neb. 101; City Council v. Leopard, 61 S. C. 99, 39 S. E. 248; State ex rel. Milwaukee v. Newman, 96 Wis. 258, 71 N. W. 438.

Mr. Dillon, in his work on Municipal Corporations, quoted from extensively by counsel for petitioner, expresses the opinion with some diffidence that a general grant of power to a municipal corporation is not sufficient to confer authority to punish an act as an offense which is also punishable by the state law. But the author concludes the subject, which he characterizes as complex, by concurring in the opinion that there are many acts of such a nature that they may, if the legislature has so provided, be an offense against the state at large and also against the special and local government of the municipality. "Accordingly," he says, "where an act is prohibited both by statute and by ordinance, it may constitute two offenses, one against the state and the other against the city or town, and where such is the case a conviction of one may not be pleaded as constituting former jeopardy when the offender is prosecuted for the other, and where such is the case the weight of authority also seems to hold that power to enact ordinances with reference thereto may be included in the general powers conferred on cities and towns by statute." 2 Dillon's Municipal Corporations (5th ed.), secs. 632, 633.

The same subject is discussed by Mr. McQuillin in his treatise on Municipal Corporations. The author says:

"As to the proposition whether this is true only where express authority has been given the municipal corporation to legislate on the subject, and that under general grant of power no implied authority to penalize acts punishable by statute exists, there is lack of harmony in the judicial decisions. The exigencies of municipal life require more rigid regulations than is required in rural sections of the state. Clearly many acts are far more injurious, and the temptation to commit them much greater, in congested centers than in the state at

large, and when done are not only injurious to the public at large but added injury to the inhabitants of the local community. The better doctrine therefore is that the municipality may exercise necessary implied authority in police control, in imposing penal regulations consistent with the constitution and laws of the state, although the act has been made a penal offense by statute." 7 McQuillin's Municipal Corporations (Supplement) sec. 878.

6, 8. The keeping for sale, or selling, or other disposal of intoxicating liquors denounced by section 2 of the city charter fall within the category of acts which may be prohibited and punished by municipal ordinance, notwithstanding such acts have been made penal by state legislation. The ordinance in this respect is not in conflict with the state law in effect when the amendment to the charter was adopted and when the offense was committed, but is consistent with it. On account of the conditions ordinarily prevailing in populous centers, the acts penalized by the ordinance constitute an offense against the municipality as well as against the laws of the state; consequently the ordinance is not subject to the constitutional inhibition that no person may be placed twice in jeopardy for the same offense. It is objected that the ordinance is unconstitutional because under it, by virtue of another provision of the charter, the right of trial by jury is denied before the police magistrate. The objection is untenable. Express authority is found in the charter for summary proceeding in cases of violation of city ordinances. Section 3, article 14, City Charter of Reno (Stats. 1905, p. 132).

Violations of municipal ordinances belong to that class of minor offenses which were in general triable in a summary manner prior to the adoption of the several constitutions, and a denial of a jury trial in such cases is not a violation of general constitutional provisions. 24 Cyc. 145; State v. Ruhe, 24 Nev. 251, 52 Pac. 274. Said the court in the latter case, quoting approvingly from Sedgwick St. & Const. Law, p. 497:

"Extensive and summary police powers are constantly exercised in all of the states of the union for the repression of breaches of the peace and petty offenses; and these statutes are not supposed to conflict with the constitutional provisions securing to the citizens a trial by jury."

9. The acts sought to be repressed by section 2 of the charter belong to a class of minor or petty offenses to which constitutional guaranties of trial by jury do not extend. If in a given class of offenses trials without a jury were formerly the prevailing rule, this rule is not changed by the constitution. Hunt v. City of Jacksonville, 34 Fla. 504, 16 South. 398, 43 Am. St. Rep. 214; Howe v. Treasurer of Plainfield, 37 N. J. Law, 145; State v. McClear, 11 Nev. 39; McInerney v. City of Denver, 17 Colo. 302, 29 Pac. 516; Am. & Eng. Ency. 974; Pomeroy's Const. Law, sec. 246; Proffatt on Jury Trials, sec. 95.

In adopting general legislation as to the same acts, the legislature has declared it to be in the exercise of police powers of the state for the protection of the public health, peace, and morals. Acts made penal for such purposes by municipal ordinances have always been prosecuted without a jury under the common law. McInerney v. City of Denver, supra. In the case just cited the court said:

"A careful examination of authorities has led us to the conclusion that, both in this country and in England, the transgression of municipal regulations enacted under the police power for the purpose of preserving the health, peace and good order, and otherwise promoting the general walfare within cities and towns had, for more than a century prior to the adoption of our constitution, been generally prosecuted without a jury," citing numerous authorities.

10. Petitioner complains that the maximum penalty which may be imposed under the ordinance is more severe than the penalty which might be imposed under the state prohibition law of 1919. There is very respectable authority to the effect that the fact that the

punishment provided in a city ordinance is more severe than that fixed in the state law on the same subject does not necessarily render the ordinance invalid. But we are of the opinion that petitioner is in no position to raise this constitutional objection. He was sentenced to pay a fine of $100, and on default of the payment of the fine to be imprisoned for a period of not to exceed one day for each dollar of the fine unpaid. At the utmost he could only be imprisoned for 100 days. The punishment adjudged was within the limitations fixed by the state law, and petitioner is in no wise injured if the penalty which could be imposed under the ordinance exceeds the maximum penalty of the former. One who is not injured by an act cannot question its constitutionality. Ex Parte Zwissig, 42 Nev. 360, 178 Pac. 20. The same rule applies to city ordinances.

The objection to the title was practically waived in petitioner's brief, and fully waived on oral argument.

It is ordered that the writ be dismissed.

COLEMAN, J.: I concur.

SANDERS, J., dissenting:

The controlling and the immediate question presented for determination in this case is that of whether or not the city of Reno, in the absence of express authority conferred upon it by its charter, has the power to enact an ordinance making it unlawful to manufacture, keep, or store, sell, or otherwise dispose of intoxicating liquors within its limits except as permitted by the laws of Nevada or of the United States.

The ordinance must be interpreted or construed in the light of the state law on the subject of prohibition at the time of its enactment. It is argued, and my associates are of opinion, that the ordinance derives its force and finds justification in that it is a police measure for the protection of the health, peace, and morals of the people of the city of Reno, enacted by virtue of the general power of the city to legislate upon those subjects. I take the position that the ordinance, being a prohibition measure, is superseded by the Nevada prohibition act,

and that the city of Reno could not, without express authority conferred upon it by its charter, enact the ordinance.

It must be conceded that the purpose of the Nevada prohibition act, enacted by direct vote of the people, was to establish prohibition as a state policy, reaching every part of the state, and to bring the municipalities thereof within its provisions. The act provides that if any municipal officer, or any municipal police, shall fail, refuse, or neglect to discharge any duty imposed upon him by law, prohibiting the manufacture, sale, keeping, and storing for sale of intoxicating liquors, he shall be removed from office in the manner provided in this section (section 26). Other provisions contained in the act are so drafted as to make it manifest that, if the officers of the several muncipalities of the state do not fail in their full duty, the health, peace, and morals of the people of the several cities of the state are amply protected by the act. The ordinance affords no greater protection or security to the people of the city of Reno against the evils of intoxicating liquors than the state law, if enforced by its municipal officers and police.

The state prohibition act is an initiative measure which was in force before the going into effect of the Eighteenth Amendment to the Constitution of the United States and passage of the National Prohibition Act, but no point is made of the existence of the federal law, though it is referred to in the ordinance. The whole scheme of the prohibition act, as shown by its full text, is so to legislate upon the subject of prohibition that no person, corporation, county, town, or city shall escape its restraining effect. The subsidiary arms of the state are converted into instrumentalities for its enforcement. It was not contemplated that, in order to secure or enforce prohibition within their limits, the cities of the state would be required to enact ordinances for these purposes, independently and exclusive of the state law. The act is a completed act, making the cities of the state agencies to carry out the people's will within their limits, without the necessity of supplementary

legislation on their part to enable them to stand as sponsors for their constabulary in its enforcement. The position that the city of Reno, by reason of the omission from its charter of any provision with reference to prohibition, derived its power to enact the ordinance under the pretext of an exercise of its police power, was apparently an afterthought to enable the city to acquire independent jurisdiction over offenders within its limits and make the punishment a fine. If the city derives its power to enact the ordinance as a prohibition enforcement measure from the general-welfare clause of its charter, independent of the state law, the result would be that upon the repeal of the state law the city of Reno would be within prohibition territory and the rest of the state be without a prohibition enforcement law. Mention is made of this contingency merely to show the fallacy of the pretext that the ordinance derives its force from the general-welfare clause of the city's charter.

But the real question is: Should the ordinance be upheld as concurrent legislation to enforce prohibition within the limits of the city of Reno? The opinion of the chief justice is not convincing on this question. It seems to go off on the proposition, supported by many authorities, that, under a general delegation of power, a city may impose penalties for acts which by the statute of the state are declared to be crimes. Authorities equally as numerous hold that, when the legislature has made provision for the punishment of an offense, it has manifested its intent that the subject-matter be fully covered by the statute, and that a municipality, under its general powers, cannot make the same act an offense against a municipal ordinance as well, unless attended by circumstances of aggravation not covered by the state law. 19 Ruling Case Law, sec. 111, p. 804. It is not incumbent upon us in this case to say which line of authorities is best supported or which is more in consonance with the principles of good government, for the reason that we are here dealing with an ordinance which, in my judgment, does not derive its force

from general delegated power but from a general statute on a particular subject, which is considered by some as radical legislation. Nevertheless, the law is the outgrowth of the will of the people, expressed by their direct vote. It is true the ordinance deals with the same subject-matter within the same territory as the state law. It is not inconsistent with or repugnant to its policy. It is also true that the penalty imposed for its violation is designated a misdemeanor, the same as the state law, but the punishment under the state law varies, while that under the ordinance is a fine of a maximum amount. We are not concerned here with the punishment, but with the power of the city to enact the ordinance. While the cities of the state are not precluded in terms by the state law from enacting prohibition measures, yet the law, in my judgment, negatives by legitimate inference the power of a city to enact a prohibition measure under the pretext that the source of its power is found in the general-welfare clause of its charter, independent of the state law. This for the reason that the state prohibition act is a law to effect prohibition in the state and cities as well. The law goes so far as to select and designate certain places in towns and cities where it is made unlawful to keep for personal use or otherwise intoxicating liquors, and its provisions and penalties are so shaped as to apply to all transactions within the cities' limits. In view of the wide scope and comprehensiveness of the law as a prohibition measure, I am of opinion that the cities of the state are not authorized to enact a prohibition law, as attempted by the ordinance in question, without express authority being conferred upon them by their charters.

The ordinance under review having been enacted without such express authority, it is invalid. I therefore dissent from the order dismissing the writ, leaving for my associates to decide whether the petitioner is deprived of a jury trial, because he stands charged with the violation of a city ordinance, even though that ordinance has for its subject and purpose the prohibition of intoxicating liquors. It is certain that offenders

against it take the law of the state into their own hands and strike down and trample under their feet the constitution of our country.