IN THE MATTER OF THE PETITION OF STUART W. DuBOIS FOR HABEAS CORPUS.

No. 5611

September 27, 1968        445 P.2d 354

*Theodore H. Stokes,* of Carson City, for Petitioner.

*Harvey Dickerson,* Attorney General; *William J. Raggio,* District Attorney, and *Virgil D. Dutt,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Petitioner DuBois, who was found guilty by a jury in Washoe County of violation of NRS 202.360 (possession by an ex-felon of firearm capable of being concealed) and sentenced to the Nevada State Prison, where he is presently confined, seeks the issuance from this court of a writ of habeas corpus ordering his release from confinement on the grounds that his imprisonment is illegal and in derogation of his constitutional rights as provided in the Constitutions of the United States and the State of Nevada.

On March 23, 1966, the petitioner fired a .22-caliber pistol in the men's rest room of Harrah's Club in Reno. He was immediately apprehended by a security guard and taken into custody by the Reno police. Thereafter, he was charged in the Reno Municipal Court with three misdemeanors: (1) carrying a concealed weapon, (2) discharging a firearm in a public place, and (3) gross intoxication. He entered a plea of guilty to each charge and was sentenced by the Municipal Judge on March 24, 1966. On April 1, 1966, the District Attorney of Washoe County charged the petitioner with a felony, namely, a violation of NRS 202.360 (possession by an ex-felon of firearm capable of being concealed). Petitioner was tried before a jury, found guilty, and sentenced to the Nevada State Prison

for a term of not less than 1 nor more than 5 years. However, the execution of the sentence was suspended and the petitioner placed on probation for a period of 5 years. One of the express conditions of probation imposed by the trial judge and accepted by the petitioner was that the petitioner would join Alcoholics Anonymous and refrain from intoxicating beverages, which appeared to be a principal cause of his difficulties.

One month later petitioner was found in a grossly intoxicated condition, arrested by the Reno police, and carried to the Reno jail. His probation was revoked, and petitioner is presently serving his term in the Nevada State Prison.

1. Petitioner asserts that his constitutional rights guaranteed under Article 1, Section 8, of the Constitution of the State of Nevada[1] and the Fifth Amendment to the Constitution of the United States[2] were violated in that he was twice put in jeopardy because he was first convicted under Reno Municipal Code Section 11.12.040 and later convicted under NRS 202.-360 of "the same offense" arising from the same conduct. Petitioner argues that the same evidence required to convict him of the violation of the Reno Municipal Code section would be

---

[1]Nevada Constitution, Art. 1, § 8. *"Rights of accused in criminal prosecutions; jeopardy; due process of law; eminent domain.* No person shall be tried for a capital or other infamous crime (except in cases of impeachment, and in cases of the militia when in actual service and the land and naval forces in time of war, or which this state may keep, with the consent of congress, in time of peace, and in cases of petit larceny, under the regulation of the legislature) except on presentment or indictment of the grand jury, or upon information duly filed by a district attorney, or attorney-general of the state, and in any trial, in any court whatever, the party accused shall be allowed to appear and defend in person, and with counsel, as in civil actions. No person shall be subject to be twice put in jeopardy for the same offense; nor shall he be compelled, in any criminal case, to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation having been first made, or secured, except in cases of war, riot, fire, or great public peril, in which case compensation shall be afterward made."

[2]United States Constitution, Amendment V [Rights of Persons]. *"Prosecution by presentment, indictment; double jeopardy; self-incrimination; due process; property taken for public use.* No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

sufficient to convict him of a violation of NRS 202.360. A reading of the code provision and the statute will illustrate the fallacy in petitioner's argument. The pertinent portion of Section 11.12.040 of the Reno Municipal Code provides:

"(a) It shall be unlawful for any person within the city limits to carry or wear a firearm in any casino, bar, bank, cabaret, theater, park, school or playground.

"(b) It shall further be unlawful for any person, except as provided above[,] to carry or wear a loaded firearm upon the public streets or in a public place within the city without first obtaining permission from the chief of police."

Under part (a) it must be shown that the accused carried or wore a firearm in a particular location within the city limits. Under (b) it must be shown that the firearm was loaded while being worn in a public place within the city, without the permission of the chief of police.

NRS 202.360 provides, in relevant part:

"2. * * * [N]o person who has been convicted of a felony in the State of Nevada, or in any one of the states of the United States of America, or in any political subdivision thereof, or of a felony in violation of the laws of the United States of America, shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person."

This statute requires not only the proof of a prior felony conviction, but also the proof of a firearm capable of being concealed upon the person.

These are two very different offenses with different elements and different purposes. Conviction under one would not necessarily lead to conviction under the other. See State v. Feinzilber, 76 Nev. 142, 350 P.2d 399 (1960). To constitute former jeopardy, the earlier offense must have been one necessarily included in the later. State v. Holm, 55 Nev. 468, 37 P.2d 821 (1935). Conviction under the Municipal Code cannot be considered a lesser offense necessarily included in the later state violation.

The standard applied in such cases was stated by this court in Lisby v. State, 82 Nev. 183, 187, 414 P.2d 592, 594 (1966): "We adhere to the rule that to determine whether an offense is necessarily included in the offense charged, the test is whether the offense charged cannot be committed without committing the lesser offense."

An ex-felon can be convicted under NRS 202.360 without ever carrying or wearing a firearm in any of the public places mentioned in the Reno Municipal Code. Mere ownership or control of a concealable weapon would be sufficient. Petitioner's argument is without merit.[3]

2. Petitioner next asserts a violation of his constitutional rights under the Sixth Amendment to the Constitution of the United States[4] and Article 1, Section 8, of the Constitution of the State of Nevada, supra, in that he was denied the right to counsel when the trial judge revoked his probation.

The trial judge appointed Allan Shamberger, Esq., of the Washoe County Bar, to represent the defendant at the State's expense. Mr. Shamberger ably represented the petitioner at his arraignment in district court, during his preliminary hearing, the jury trial, and sentencing. The petitioner, however, elected to defend himself at the commencement of the trial, as evidenced by his remarks appearing in the transcript of the proceedings.

"THE COURT: All right. As you know, Mr. Shamberger, the defendant or you may make the opening statement at this time on behalf of the defendant. I have indicated in preliminary matters that I would permit the defendant—which is his right —to act as his own attorney, and he has said that he wants to be his attorney in this case, as I understand it. Is that right?

"THE DEFENDANT: Yes, your Honor.

"THE COURT: All right. You go ahead. But I am going to hold you accountable to the strict rules of procedure, as I would any other lawyer. All right, go ahead.

"THE DEFENDANT: Thank you. Ladies and gentlemen of the jury: First, I would like to say that I have not chosen to defend myself in this matter due to any delusions that I might have as to my ability, but it is a custom to be appointed an

---

[3]The further point of lack of jurisdiction in the municipal court to convict for the felony may also serve as an independent basis for denying the claim of former jeopardy. State v. Holm, supra. An act prohibited by both the city and the state can properly be punished by both. Ex parte Sloan, 47 Nev. 109, 217 P. 233 (1923).

[4]United States Constitution, Amendment VI [Rights of Accused in Criminal Prosecutions]. *"Rights of accused in criminal prosecutions.* In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense."

attorney to defend you. Mine has been practicing law for sixteen months, divorces—

"THE COURT: Now, just a minute, just a minute. We are not going to let you make an argument at this time. You tell us what you expect to prove."

The petitioner did conduct his own defense, assisted whenever permitted by Mr. Shamberger. The jury found him guilty. The trial judge ordered a presentencing investigation and placed the petitioner on probation for 5 years. The following appears in the transcript of proceedings after the defendant was sentenced and when the trial judge granted him probation:

"THE COURT: Do you have anything else to say?

"THE DEFENDANT: No, your Honor.

"THE COURT: Well, I must admit that I have been concerned about your case, even though perhaps you didn't think that I was, ever since the case went to trial, and ever since the jury returned a verdict of guilty, which they, of course, were entitled to do, and which they almost had to do under the circumstances, because there is no question but what you are an ex-felon and that you were in possession of a firearm, and that's a violation of the felony law of the State of Nevada. So, the jury promptly came in with a verdict of guilty, which is, of course, what they should have done in the first instance.

"I suppose, though, the easiest thing for me to have done at that particular time, particularly after you put us to a lot of trouble, was to deny your request for probation at that particular time. But I guess that I—I don't say that I felt sorry for you, but I did feel that there was something about your make-up, something about you that maybe you deserved some additional consideration, so that is one of the reasons that I granted the request that the matter be referred to the Probation Officer. As I say, I don't know that you deserved any particular assistance or help from any of us around here. You have got the full treatment, so far as the law is concerned, so far as being informed against, and then having your case sent back to the Justice's Court for a preliminary hearing. Then you got sent back here, and you were tried, and you had a good lawyer, and you gave him a bad time, and you gave me a bad time. Incidentally, I didn't think that you were a very good lawyer before the jury. I thought that your presentation was about as poor as anything that I have ever seen, and I thought—

"THE DEFENDANT: I will agree with that.

"THE COURT: Don't interrupt. I thought you made a very poor impression before the jury, and I was just hoping that some of the other gentlemen downstairs who were in the county

jail would have an opportunity of seeing a defendant handle his own criminal case.

\* \* \* \* \*

"Well, you know what your record is. Commencing in 1928, four prior felonies, including one ex-felon in possession. You have had three misdemeanor penalties for larceny, joy riding, as you say, for taking a fellow's car for just a few minutes, which may or may not be bad in your opinion.

"You have had two lewd conduct cases, and whatever your explanation is, they are on your record as lewd conduct with a minor, which may or may not be exactly true. But, then, they are on your record.

"At least thirteen times you have been arrested for drinking. How many other times you have been drunk in and about a public place, I don't know, but you have had at least thirteen arrests. You have been in twenty-five, thirty, fifty different towns around the country. You have got a record here of five pages with the Federal Bureau of Investigation.

"I must admit, though, that a good many of these things are as a result of drinking, and I must say that nobody has been hurt, apparently, and whatever you have burglarized, you have undoubtedly deprived someone of their property, which may or may not be hurting somebody. But, at least, you certainly have occupied the time of the police and the District Attorneys and other people for a good many years, and that is not to your credit, I can tell you that.

"Well, I must say this: That I still considered your case, and back of it all is the fact that there has been a considerable amount of drinking. Further, in back of my thinking is the fact that eventually something happens to all criminals. I guess there are some old convicts in the State Prison, but I don't know any that are fifty-five, or sixty, or seventy, so, somewhere along the way, I guess a fellow sees the light, and I guess somewhere along the way he straightens himself out. Rather than prolonging this, I hope maybe you have seen the light in this particular case, and I am going to grant you probation.

"Maybe it is against my best ideas, but I am going to grant you probation. It is going to be for a period of five years. You are going to join AA and be a good member. I am going to make this further condition: That if you are arrested for drunkenness of any sort, or description, I am going to revoke your probation.

"Is that understood?

"THE DEFENDANT: That is the best thing that has ever happened to me, your Honor.

"THE COURT: As I say, it is against my better judgment, I guess, but I am going to give you one more chance and see if you can't see the light here, just one more time.

"I guess if you get drunk, why, you understand what the consequences are. I hope that you will come in and say: All right, I am going to Carson without any more ado.

"Do you understand that?

"THE DEFENDANT: I certainly do, your Honor.

"MR. BALLMAN [Probation Officer]: Your Honor, was this a special condition, that he participate in the program of AA?

"THE COURT: I should say it is.

"All right. You may have to make some arrangements with him before he can be released, but you take your time and do whatever you need to do, will you?

"MR. BALLMAN: Yes.

"THE COURT: I don't know whether I should let you have this case or not. To me, maybe it is a waste of time, but, as I say, if there is any indication that he is drinking, I mean drinking, not drunkenness, but, I mean, drinking, if there is any indication of that, I want you to process his case through and revoke his probation that quick. Do you understand that?

"MR. BALLMAN: Yes.

"THE COURT: All right. You are under a specific duty to do that. All right."

The petitioner within one month was arrested by the Reno police as grossly intoxicated and had to be literally carried into the Reno police station. The trial judge, as promised, revoked his probation, and he was remanded to the custody of the Sheriff of Washoe County for delivery to the Warden of the State Prison so that he might commence his prison term. Among the remarks at the probation revocation hearing appears the following colloquy between the trial judge and the petitioner:

"THE PROBATION OFFICER: Your Honor, on September 21, 1966, this year, the defendant, Mr. DuBois, was granted probation, after having been convicted by a jury of ex-felon in possession of a firearm. As a special condition of that probation, he was instructed by the Court to avoid entirely the use of alcohol.

"On November 7th, approximately a month following his being granted probation, he was arrested by officers of the Reno Police Department, who stated in their report that he was so grossly intoxicated that he had to be carried to the jail.

"As per the order of the Court, a request for a warrant and this revocation hearing was subsequently made on that basis.

\* \* \* \* \*

"[THE DEFENDANT] I went back to the motel. About 11:00 o'clock Saturday night, this Saturday night, she and another girl went off for some groceries and got a pint of gin, and I succumbed to a drink of gin about 1:00 o'clock in the morning.

"THE COURT: How much did you say you had?

"THE WITNESS [DEFENDANT]: Oh, well, I started with that one drink, your Honor. I have heard each of those alcoholic members—not each one of them, but eight of ten, and it's always—* * *

"THE COURT: Well, you remember, I said that I was going to give you a further chance. I thought maybe that you had been in trouble so long, or at least over these years, and that something happens to a fellow after all of these years.

"I was just hoping that maybe you could see the light, but, I don't know.

"I said: As I say, it's against my better judgment, I guess, but I'm going to give you one more chance and see if you can't see the light here just one more time. I guess if you get drunk, why, you understand what the consequences are. I hope that you will come in and say: 'All right, I'm going to Carson without any more ado.'

"Do you understand that?

"You said: I certainly do, your Honor, yes."

In Shum v. Fogliani, 82 Nev. 156, 158, 413 P.2d 495, 496 (1966), we held that the probationer need not be represented by counsel during a revocation proceeding, on the grounds that probation is not a constitutional right but a right given the defendant by legislative grace.

Petitioner, however, asserts that the Supreme Court of the United States, in Mempa v. Rhay (and its companion case, Walkling v. Washington State Bd. of Prison Terms & Paroles), 88 S.Ct. 254 (1967), has settled this question and that a probationer at a revocation hearing may be represented by his counsel and must be advised that counsel will be appointed to represent him at the state's expense if he is without funds to secure his own attorney. The Mempa and Walkling cases were appeals from the State of Washington, where the statutory proceedings for sentencing are substantially different from those in Nevada. In Washington the sentencing is deferred and imposed at the time probation is revoked, and the Court in the Mempa and Walkling cases was primarily concerned with the right to counsel at a *sentencing* proceeding.

As Mr. Justice Marshall, who wrote the Court's opinion, stated in the concluding paragraph:

"In sum, we do not question the authority of the State of Washington to provide for a deferred sentencing procedure coupled with its probation provisions. Indeed, it appears to be an enlightened step forward. All we decide here is that a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing. We assume that counsel appointed for the purpose of the trial or guilty plea would not be unduly burdened by being requested to follow through at the deferred sentencing stage of the proceeding."

In United States v. Hartsell, 277 F.Supp. 993, 994 (1967), the court said:

"The Supreme Court announced its hopefully awaited opinion in Mempa v. Rhay and Walking [sic] v. Washington State Board of Prison Terms and Paroles on November 13, 1967. Therein, Mr. Justice Marshall, reviewing earlier decisions of the Court, stated flatly '* * * that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected. In particular, Townsend v. Burke, supra [1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690], illustrates the critical nature of sentencing in a criminal case and might well be considered to support by itself a holding that the right to counsel applies at sentencing. [Footnote reference here omitted.] Many lower courts have concluded that the Sixth Amendment right to counsel extends to sentencing in federal cases.⁴ * * *' 389 U.S. 128, at 134, 88 S.Ct. 254, at 257, 19 L.Ed.2d 336.

" '4.  [in original] E.g., Martin v. United States, 182 F.2d 225 [20 A.L.R.2d 1236] (C.A. 5th Cir. 1950); McKinney v. United States, [93 U.S.App.D.C. 222] 208 F.2d 844 (1953); Nunley v. United States, 283 F.2d 651 (C.A. 10th Cir. 1960).'

"At first blush, the foregoing language might be accepted as holding that a federal probationer, such as Mr. Hartsell, who admits in a probation revocation hearing the violation of, or is found judicially to have violated, the conditions of his probationary sentence, and as a consequence is sentenced, is entitled to the benefit of retained or appointed counsel.² Such is not the holding, however.

"2.  This particular judge would welcome such a rule, if accompanied by the provision of counsel for indigents under the provisions of

the Criminal Justice Act, but must follow the precedent established by the Court of Appeals for this Circuit.

"Federal courts have long held that '* * * the constitutional right to assistance of counsel in the defense of a criminal prosecution, given by the Sixth Amendment, does not apply to a hearing on a motion to revoke probation. * * *' Welsh v. United States, C.A. 6th (1965), 348 F.2d 885, 887[5], citing, inter alia, Bennett v. United States, C.A. 8th (1947), 158 F.2d 412, 415, certiorari denied (1947), 331 U.S. 822, 67 S.Ct. 1302, 91 L.Ed. 1838; Crowe v. United States, C.A. 4th (1949), 175 F.2d 799, 801, certiorari denied (1950), 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586, rehearing denied (1950), 339 U.S. 916, 70 S.Ct. 559, 94 L.Ed. 1341. Obviously, although accorded several opportunities to overturn this holding, the Supreme Court, by denials of certiorari, has allowed it to stand as stated by the Court of Appeals for the Sixth and other circuits.

"Welsh, supra, is easily distinguishable from Mempa and Walking [sic], supra. Unlike the state prosecutions in the latter cited cases, the federal probation violator in Welsh had been either tried and convicted (or convicted on a plea of guilty), could not have withdrawn his plea of guilty after having begun a probationary sentence, received a completely ascertainable sentence, and had no legal rights to lose, absent their exercise at the sentencing stage of the proceedings, in the sentencing process. Also, none of the citations noted by Mr. Justice Marshall in footnote 4 of the opinion, supra, involved sentencing after revocation of probation. Finally, the Supreme Court made it clear in its most recent proclamation that all that was being decided in those cases was that a lawyer must be present in a proceeding for a deferred sentencing procedure coupled with provisions for probation under a state statute, whether the proceeding '* * * be labeled a revocation of probation or a deferred sentencing. * * *' 389 U.S. at 137, 88 S.Ct. at 258, concluding paragraphs."

Since the paramount factors which the Court found so important in sentencing in Mempa and Walkling are not present under the Nevada procedure, where sentencing occurs prior to a determination regarding probation, petitioner's contention is without merit.

3. Next, petitioner complains that his constitutional rights guaranteed under Article 1, Section 3, of the Constitution of

the State of Nevada[5] and under the Sixth Amendment to the Constitution of the United States, supra, were violated by the Deputy District Attorney's comments to the jury regarding petitioner's failure to take the stand and testify during the trial.

Petitioner conducted his own closing argument to the jury. During the course of that argument the prosecutor felt compelled to respond to certain statements. The following excerpts from the transcript contain the allegedly prejudicial comments made by the prosecutor.

"THE DEFENDANT:   * * *

"I returned to the State of Texas, and at that time, automatically—

"MR. SANTOS:   Your Honor, I think the defendant is testifying rather than arguing. *He had his opportunity to take the stand in his own behalf.*

"THE COURT:   I never heard any evidence to the effect that you left the State, Mr. DuBois." (Emphasis added.)

And further:

"THE DEFENDANT:   There has been no aggravation of the case. Ladies and gentlemen, you heard the man say that he walked up, took the pistol out of my pocket. Of course, Mr. Moore denied that I submitted to him the gun for sale, and I wasn't, of course, permitted to prove that I hadn't had the gun 30 minutes—

"MR. SANTOS:   I would have to object, your Honor, in order to have the jury understand that statement. *The defendant had an opportunity to take the stand.* He said he didn't have an opportunity to refute anything.

"* * *

"THE COURT:   All right, Mr. DuBois, I am not going to permit you to make the argument that you just made. * * *." (Emphasis added.)

In Fernandez v. State, 81 Nev. 276, 279, 402 P.2d 38, 40 (1965), this court stated:

"The distinction appears to be that defendant's failure to testify cannot directly or indirectly be the subject of comment by

---

[5]Nevada Constitution, Art. 1, § 3. *"Trial by jury; waiver in civil cases.* The right of trial by Jury shall be secured to all and remain inviolate forever; but a Jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law; and in civil cases, if three fourths of the Jurors agree upon a verdict it shall stand and have the same force and effect as a verdict by the whole Jury, Provided, the Legislature by a law passed by a two thirds vote of all the members elected to each branch thereof may require a unanimous verdict notwithstanding this Provision."

the prosecution, but a reference to evidence or testimony that stands uncontradicted is acceptable. Paraphrasing Griffin, what the jury may infer given no help from the court (or prosecution) is one thing. What they may infer when the court (or prosecution) solemnizes the silence of the accused into evidence against him is quite another. Permitting such comment imposes a penalty for exercising a constitutional privilege. The dividing line must be approached with caution and conscience."

Under this language it does appear that the brief comments by the prosecutor were improper. However, in the unusual context of this closing argument they would appear to be harmless. There appears to be no effort by the prosecution unfairly to encourage the jury to draw improper inferences. Indeed, the objections were but brief attempts to keep the argument of the petitioner within proper bounds and were not even comments upon the evidence against the petitioner. There was no attempt to solemnize "the silence of the accused into evidence against him."

The remark by the prosecutor sustained in Fernandez, supra, at 278, actually seems more prejudicial to that defendant's interests than the remarks presently before the court. In that case the prosecutor stated: "In the defendant's case, as feeble as it was, there was no denial that the defendant ever possessed this device * * *." In the context of the case at bar, the present prosecutor's statements, though improper, should be and are deemed harmless error. Chapman v. California, 386 U.S. 18 (1967).

4.   Finally, the petitioner asserts that he was also denied his constitutional right to a trial before an impartial jury. In his affidavit filed with this court on July 26, 1966, in support of his petition for the writ, petitioner alleges that one of the jurors was a friend of petitioner's counsel and should have been, therefore, challenged peremptorily and removed from the jury.[6]

---

[6]Affidavit of petitioner:

"2.   That ALLAN SHAMBERGER, attorney at law, was appointed by the Court to represent him, but that he elected to represent himself; and that said ALLAN SHAMBERGER remained to advise affiant as might be necessary during the trial at the Court's direction.

"3.   That although affiant was representing himself, the Court did not permit him to conduct the voir dire examination of the jury but directed that said ALLAN SHAMBERGER conduct the examination.

"4.   That on voir dire examination Juror No. 4, one BUDDY GARCIA, admitted that he was a personal friend of the said ALLAN SHAMBERGER.

"5.   That affiant felt that said BUDDY GARCIA was prejudiced

Mr. Shamberger, petitioner's counsel, was apparently satisfied with the qualifications of Juror Garcia, because he refused to challenge him. Petitioner argues that Mr. Garcia, Juror No. 4, was shown to be "a close personal friend" of petitioner's appointed counsel and that said juror was prejudiced against the petitioner because of the disparaging manner in which petitioner spoke about "his" counsel, who was present at the request of the court, petitioner having elected to act as his own counsel. The record reflects no factual basis for petitioner's claim.

Even assuming the facts to be as petitioner states them, they do not come to his aid. Though the voir dire examination of the jurors was conducted by counsel, the petitioner was acting as his own attorney and assumed the responsibilities of such office. People v. Mattson, 336 P.2d 937 (Cal. 1959). In spite of this assumption of responsibility, the court specifically made sure that petitioner understood that he had the right to challenge a juror before he was sworn.[7] The petitioner failed to so challenge this juror and therefore is in no position to complain of prejudice resulting from his presence on the jury. State v. Fouquette, 67 Nev. 505, 221 P.2d 404 (1950); Peoples v. State, 83 Nev. 115, 423 P.2d 883 (1967).

The application for the writ is denied.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.

against him because of his friendship with ALLAN SHAMBERGER and asked ALLAN SHAMBERGER during said voir dire examination to have BUDDY GARCIA removed for cause or peremptorily.

"6. That ALLAN SHAMBERGER refused to challenge the said BUDDY GARCIA who remained a member of the jury which returned a verdict of guilty in said action."

[7]"THE COURT: Mr. Shamberger, the defendant is informed that if he intends to challenge an individual juror, he must do so when the juror appears and before he is sworn."