Clare J. Hoyt, J.
The above 19 relators, all inmates of Green Haven Prison, and returned there by reason of parole *475 violations, seek their release in these habeas corpus proceedings because they were not afforded counsel at the parole revocation hearings before the Parole Board. Since this common question is raised in all these proceedings, this single opinion will determine all of these proceedings.
Petitioners rely on a Fourth Department decision, People ex rel. Combs v. La Vallee (29 A D 2d 128, app. dsmd. 22 N Y 2d 857) which granted relief in a habeas corpus proceeding by directing the Board of Parole to hold a new revocation hearing at which the relator was to be represented by counsel. The question has not yet been determined by the Court of Appeals, although the court is mindful of Chief Judge Fuld’s statement in a dissent in People v. Simons (22 N Y 2d 533, 545): “ I am inclined to the view that a parolee is also entitled to be represented by counsel in a parole revocation proceeding which is truly independent of, and unrelated to, a criminal prosecution brought against the parolee. (Cf. Mempa v. Rhay, 389 U. S. 128.) That question, however, need not here be considered or passed upon.”
Combs (supra) was followed by a case decided in New York County (Matter of Menechino v. Division of Parole, 57 Misc 2d 865) but three cases before Special Term, Supreme Court, Westchester County held parties charged with parole violations not entitled to counsel (People ex rel. Trapense v. Deegan, not reported; People ex rel. Jones v. Deegan, N. Y. L. J., Oct. 24, 1968, p. 19, col. 6; People ex rel. Smith v. Deegan, N. Y. L. J., Oct. 10, 1968, p. 18, col. 6). Dicta in a Third Department case, Schwartzberg v. Oswald (8 A D 2d 570), decided before Combs, is in opposition to the Combs holding.
Matter of Briguglio v. New York State Bd. of Parole (55 Misc 2d 584, affd. without opn. 30 A D 2d 639) is relied on by respondent and was cited in the Special Term, Supreme Court, Westchester County cases (supra) as authority for the denial of the right to counsel. It must be noted that Briguglio (supra) denied the right to counsel to a prisoner seeking release on parole, not a parolee charged with a violation of parole. The denial of counsel to one seeking release on parole is not controlling on the question of the right to counsel of one charged with a parole violation.
The issue presented is a narrow one, namely, whether either the United States or New York Constitutions require that relators, or some of them, be afforded counsel at parole revocation proceedings. The policy considerations that bear on the question are not open because the New York Legislature has specifically denied an alleged parole violator the right to appear *476 before the board on a revocation hearing ‘ ‘ through counsel or others ” (Correction Law, § 218). If this determination is to be overturned, a clear constitutional right to the relief sought must be shown.
In New York, the State Constitution authorizes the Legislature to provide ‘ ‘ for systems of probation and parole of persons convicted of crime ” (art. XVII, § 5). Article 8 of the Correction Law (§§ 210-225) establishes the parole system. The Board of Parole is charged with the duty of determining which prisoners should be released on parole and under what conditions (§ 210). The same section invests the board with the duty of continuing supervision over parolees and of determining whether the conditions of parole imposed are being violated. The conditions of release on parole may be tailored to fit individual cases (§ 215) but certain standard conditions are prescribed by regulation in all cases (9 NYCRB. 155.11-155.16). Before being granted his conditional liberty, a parolee must sign a release agreement that requires him to make regular reports to his parole officer, obey instructions, maintain employment, conduct himself as a good citizen and abstain from wrongdoing and evil associations (9 NYCRB 155.15). If the parole officer has reasonable cause to believe that the parolee “ has lapsed, or is probably about to lapse, into criminal ways or company, or has violated the conditions of his parole in an important respect ’ ’ he shall report the same to a member of the Parole Board who may then issue a warrant for the parolee’s arrest (§ 216). Upon the same information the board may declare the parolee delinquent and upon the prisoner’s return to the custody of the Department of Correction, the board “ shall, as soon as practicable, give such parole violator an opportunity to appear personally, but not through counsel or others, before three members of such board of parole and explain the charges made against him” (§ 218).
From the date he is declared delinquent until he is returned .to the custody of the Department of Correction, the running of the parolee’s sentence is interrupted and he receives no credit for that time (People ex rel. Dote v. Martin, 294 N. Y. 330). However, time spent on parole prior to the declaration of delinquency is credited to the prisoner’s maximum sentence (People ex rel. Ingenito v. Warden of Auburn Prison, 267 App. Div. 295, affd. 293 N. Y. 803). After the revocation hearing, the board must determine what portion of the remaining balance of the prisoner’s maximum sentence must be served in prison before he may again be paroled (§ 218). In addition to the loss of conditional liberty that a revocation of parole brings *477 about, the prisoner also loses all “ good time ” earned prior to his release on parole by virtue of the parole violation (Matter of Milford v. New York State Dept. of Correction, 19 A D 2d 920).
There is a firm line of authority that the Parole Board’s determination on the question of revocation is not subject to judicial review (Matter of Hines v. State Bd. of Parole, 293 N. Y. 254, 257; People ex rel. Natoli v. Lewis, 287 N. Y. 478, 481; People ex rel. Di Lorenzo v. Fay, 13 A D 2d 1034; Matter of Mummiami v. New York State Bd. of Parole, 5 A D 2d 923, cert, den. 362 U. S. 953; People ex rel. Spinney v. Fay, 23 A D 2d 701). But whatever the board’s determination may be on the merits, it must be arrived at according to law (Matter of Hines v. State Bd. of Parole, supra, p. 257). Thus the manner in which the board reaches its determination must meet the standard of procedural due process. Indeed, if there is absolutely no factual basis for the violation charged, one court has held that the determination made, not just the procedure employed, may be the subject of judicial review (People ex rel. Marvin v. McDonnell, 280 App. Div. 367; but, see, People ex rel. Di Lorenzo v. Fay, supra).
Parole violations fall into three main categories ■ — new arrests, technical violations and absconding (1967 Facts and Figures, Division of Parole, p. 24). The first category encompasses arrests of a parolee for a new offense. The decision to return the parolee is held in abeyance until the charge is disposed of as is the decision in the case of absconders until they become available (Thirty-Seventh Annual Report of Division of Parole, 1967, pp. 155, 157; N. Y. Legis. Doc., 1967, No. 100). Technical violations arise when the conditions of parole are violated in some respect other than by a new arrest or absconding (1967 Report, p. 24). In these eases, the decision to return the parolee or to restore him to parole is immediately made (Thirty-Seventh Annual Report, p. 157).
The parole violation procedure is set in motion by the filing of a written violation report by a parole officer that contains allegations “ proven and supported with the same thoroughness which is used in obtaining evidence for legal action ” (1967 Report, p. 24). Before the report is submitted, the parolee’s statement is taken and included (id.). The report is then submitted to a member of the board who determines whether a return or detainer warrant should issue (Thirty-seventh Annual Report, pp. 155-157) and upon the issuance of the warrant the parolee is declared delinquent. Revocation hearings before members of the board are determined on the basis of the viola *478 tion report (1967 Report, p. 24) and an appearance by the parolee (9 NYCRR 155.19). Upon the information supplied, the board may make its determination or order a further investigation and report (1967 Report, p. 25).
The factors considered in reviewing a technical violation are all set forth in the Thirty-seventh Annual Report at pages 157-158: “ In reviewing the case of a parole violator, consideration is given to the quantitative and qualitative aspects of the casework of the Parole Officer Questions are raised as to the type of treatment attempted, whether it has been effective or whether the Parole Officer has reported problems without attempting a solution. An attempt is made to determine whether or not the violation indicates a failure of the parolee or of the parole agency; whether there are methods of treatment or other resources which can still be employed in the hope of effecting an adjustment. For example, a review of the case may disclose that the parolee’s delinquent trends are the result of his continued residence in an undesirable area where he is exposed to temptations with which he should not be obliged to contend. The Parole Officer may have regularly visited the case but failed to take cognizance of the effect of the community situation on the parolee’s behavior and had taken no positive steps to ameliorate the situation.
“ The parolee’s adjustment to parole supervision is another factor that is carefully weighed. Due consideration is given to the parolee’s attitude toward his Parole Officer and toward parole supervision; whether he has been cooperative or antagonistic; whether he realizes his need for casework treatment and accepts it; whether he has conformed in a generally satisfactory manner with parole regulations; and whether there is evidence that the parolee has made a reasonable adjustment within the limits of his mental and emotional capacity.
“ The element of community risk is always a major factor in such evaluation. Does such a risk exist? If so, what is the nature of the risk to property or to persons ? Has a determination that a risk does exist been made on an objective basis? Do the actual facts of the case and the proportions of the criminal history present the parolee as an uncontrollable danger in the community? Many parolees who violate the conditions of their parole do not present a serious risk to the community. They are social risks rather than criminal risks and as such every attempt is made to decide what course of action is best suited to the furtherance of their rehabilitation.
“ While a member of the Board of Parole makes the final decision in the case, and records his decision in writing, the *479 point of view of the Parole Officer and the opinion of his immediate supervisor are given full consideration by the Board Member.”
The parolee’s appearance at the review without counsel does not, in this court’s opinion, deprive him of any constitutional rights. The board’s determination on the question of revocation is not subject to review, and it is not predicated on the resolution of specific factual issues upon which counsel, as a practical matter, could present evidence which would affect the board’s decision. Were we to grant counsel in these matters, what would be the nature of the hearing? There is no authority for the production of witnesses, the issuance of subpoenas and other rights normally accorded in a judicial hearing. Although it is recognized that the difficulty implementing the appearance of counsel in and of itself may not be a ground for the denial thereof, it is a very strong and practical consideration in view of the absence of a right of review and the very special factors and consideration that a Parole Board member must arrive at in determining whether the privilege of parole, once given, is to be revoked.
A number of cases have held that the Constitution does not even require a hearing in order to revoke parole. (See Eason v. Dickson, 390 F. 2d 585; Rose v. Haskins, 388 F. 2d 91, cert, den. 392 U. S. 946; Williams v. Dunbar, 377 F. 2d 505.) Thus, while it is permissible to make a statutory provision for a hearing, it is not constitutionally required (Escoe v. Zerbst, 295 U. S. 490, 492-493). When a hearing is provided for by statute, as it is in New York, nothing in the United States Constitution requires that the parolee be afforded counsel. (See, e.g., Williams v. Dunbar, supra; Jones v. Rivers, 338 F. 2d 862; Hyser v. Reed, 318 F. 2d 225 and cases collected in those opinions.) Mempa v. Rhay (389 U. S. 128) does not overturn these decisions. The holding in Mempa v. Rhay is that a person convicted of a crime whose sentencing is deferred for probation— not parole — is entitled to counsel when probation is revoked and he is sentenced to a term of imprisonment. The rationale is that counsel ‘1 is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected ” (p. 134). Parole revocation is not a stage of a criminal proceeding. That proceeding terminated with sentencing while, by way of contrast, the probationer is still participating in a criminal proceeding until sentence is imposed (Eason v. Dickson, supra; Williams v. Patterson, 389 F. 2d 374). The cases relied upon by the court in Mempa v. Rhay all concerned the right to counsel at some stage of a criminal proceeding. *480 A majority in the New York Court of Appeals has held that a parole revocation proceeding is not a criminal proceeding (People v. Simons, 22 N Y 2d 533, supra), thus there is no Federal constitutional requirement that a parolee be accorded the same rights as a probationer.
People ex rel. Combs v. La Vallee (supra) based its determination on New York decisional law and its Constitution pertaining to the right to counsel not on the Federal Constitution (29 A D 2d 128, 130). If the cited authorities have correctly construed the Federal Constitution as not requiring the assistance of counsel, then New York law, as interpreted in Combs, confers rights on a parolee that are greater than those provided by the Federal Constitution.
In New York, the right to counsel is guaranteed “in any trial in any court” (N. Y. Const., art. I, § 6). The Fourth Department held that “ parole court ” was such a court, so counsel, they reasoned, must be provided (Combs, supra, p. 131). It would seem that when the practice in parole revocation proceedings is considered, the characterization of the Parole Board as a court, as that word is used in the State Constitution, is not in accord with the meaning intended. While the right to counsel in a criminal proceeding is a basic right conferred in both the State and Federal Constitutions, parole revocation is not a criminal proceeding, nor even a judicial proceeding (People v. Simons, supra). The constitutional provision guaranteeing counsel has been liberally construed “ to apply to trials before any authority having jurisdiction to try ” (People ex rel. McDonald v. Keeler, 99 N. Y. 463, 484), yet it would be improper to say that a parole revocation hearing is a trial. It is an administrative proceeding, not judicially reviewable, where a purely discretionary determination concerning the withdrawal of a privilege, not a right, is made. The State Constitution does not, under these circumstances, guarantee a parolee counsel.
The writs are dismissed and the relators remanded.