ODE KIE ROBERTS, PETITIONER, v. CARL G. HOCKER, WARDEN OF THE NEVADA STATE PRISON, RESPONDENT.

No. 5593

June 19, 1969                           456 P.2d 425

*Noel E. Manoukian,* of Zephyr Cove, for Petitioner.

*Harvey Dickerson,* Attorney General, and *Peter I. Breen,* Deputy Attorney General, for Respondent.

## OPINION

By the Court, COLLINS, C. J.:

This is an original application for habeas corpus in this court.

Petitioner was convicted of grand larceny and sentenced on November 30, 1966, to a 2 to 14 year term in the penitentiary. On February 12, 1968, the State Parole Board granted petitioner parole pending the furnishing of a plan for rehabilitation. Before his release was effected, information was received from the State of Washington that petitioner was wanted there on a felony charge. The parole board reconsidered its previous order and ordered petitioner paroled to a Washington hold.

On April 2, 1968, a Nevada governor's warrant was issued on the request of the Washington governor under the Uniform Criminal Extradition Act (NRS 179.177–179.235). Petitioner was taken before the First Judicial District Court and advised of his rights under the extradition act. As an indigent, he requested appointment of counsel, which was refused, although he was given time to obtain his own counsel. On May 13, 1968, while petitioner was still without counsel, the court ordered the governor's warrant to be executed and petitioner released to the Washington authorities.

Other legal action intervened which is not relevant to the issues here. Finally, upon application to this court for habeas corpus, counsel was appointed, the issues framed and argument had.

There are three issues before us for decision; they are:

I. Will habeas corpus lie to determine the validity of a parole to hold and of extradition proceedings instituted by a demanding state seeking extradition of a person confined in the Nevada State Prison?

II. Does petitioner have the right to appointment of counsel to represent him at the extradition proceeding and in his petition for habeas corpus to test the validity of the restraint?

III. What is the scope of review in an extradition habeas corpus proceeding?

1. The writ of habeas corpus is available to every person unlawfully committed, detained, confined or restrained of his liberty. NRS 34.360. In State v. Fogliani, 82 Nev. 300, 417 P.2d 148 (1966), this court held: ". . . the availability of the writ of habeas corpus. . . has been expanded to allow the presentation of questions of law that cannot otherwise be reviewed, or that are so important as to render ordinary procedure inadequate and justify the extraordinary remedy." Other cases have held that habeas corpus will lie to test the constitutionality of an ordinance while on bail (Ex parte Philipie, 82 Nev. 215, 414 P.2d 949 (1966)); to test unlawful restraint (Garnick v. Miller, 81 Nev. 372, 403 P.2d 850 (1965)); or when one contends that he is "aggrieved" by the governor's order (United States v. Superintendent of County Prisons, 111 F.2d 409 (3rd Cir. 1940)). For a case discussing the very issue before us, see Ex parte Drake, 238 P.2d 566 (1951), and also see United States v. Jackson, 234 F.2d 742 (2d Cir. 1956). We hold that habeas corpus will lie in this situation to test the legality of the particular restraint, even though it would not permit discharge from actual custody. See NRS 34.380.

2. NRS 179.197 provides, in part, that:

"1. No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him has appointed to receive him unless he is first taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the *right to demand and procure legal counsel.*

"2. If the prisoner *or his counsel* state that he or *they* desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus." (Emphasis added.)

The right to demand and procure legal counsel during an extradition proceeding is wholly statutory and not from any constitutional right or mandate. In the absence of a statute allowing a defendant the right to demand and procure legal counsel at an extradition proceeding, no such right exists. Applications of Oppenheimer, 389 P.2d 696 (Ariz. 1964), Rugg v. Burr, 402 P.2d 28 (Ariz.App. 1965).

The court was confronted with an analogous situation in the cases of In re DuBois, 84 Nev. 562, 445 P.2d 354 (1968), and Smith v. Warden and Luse v. Warden, 85 Nev. 83, 450 P.2d 356 (1969), where we held that an indigent person, on probation, was not entitled to appointed counsel at a revocation hearing because such a hearing is not a critical stage of the criminal proceeding. In the *Smith* and *Luse* case we said: "The Sixth Amendment right to counsel cases decided by the United States Supreme Court center upon the need for counsel at critical stages of the criminal proceeding in order to insure fundamental fairness in the treatment of an accused or of one upon whom suspicion is focused. Consequently, that court has ruled that the right to counsel attaches when a police investigation is no longer a general inquiry into an unsolved crime but has begun to focus upon a particular suspect in police custody (Escobedo v. Illinois, 378 U.S. 478 (1964)); at pre-trial lineup conducted for identification purposes (United States v. Wade, 388 U.S. 218 (1967); Gilbert v. California, 388 U.S. 263 (1967)); at the time when a plea is entered (White v. Maryland, 373 U.S. 59 (1963); Hamilton v. Alabama, 368 U.S. 52 (1961)); at trial (Gideon v. Wainwright, 372 U.S. 335 (1963)); when sentence is imposed (Mempa v. Rhay, 389 U.S. 128 (1967)); and on a convicted person's first appeal granted as a matter of right (Douglas v. California, 372 U.S. 353 (1963)). All of those cases rest upon the guarantees of fair procedure inherent in the Due Process Clause of the Fourteenth Amendment through which the Sixth Amendment is made applicable to the states, with only Douglas v. California giving equivalent emphasis to equal protection."

If a probation revocation hearing, where a defendant is subject to the loss of his liberty for an extended period of time, is not a critical stage of the criminal proceeding *a fortiori,* an extradition proceeding is certainly not a critical stage of the criminal proceeding. The defendant can only be returned to the demanding state for trial. We see nothing sinister or foreboding about that situation. In fact, the opportunity for one accused to have a trial and be faced by his accusers is the touchstone of jurisprudence. We cannot presume that the defendant will be treated with fundamental unfairness in the demanding state. In fact, with the forest of safeguards set down by the United States Supreme Court, as well as post-conviction remedies and the virtually unlimited right to appeal, we must assume that the defendant will be treated fundamentally fair and will be afforded a fair trial at all stages of the proceedings in the demanding state.

It is our view that an extradition hearing is not a critical stage of the criminal proceeding. The guilt or innocence of the defendant is not raised or otherwise brought into issue or tested. The meaning of NRS 179.197 is unambiguous and needs no construction; it merely affords a defendant the privilege to have counsel present. If the legislature deems it desirable to afford appointed counsel to indigents during an extradition proceeding, it is their prerogative, not ours.

Petitioner relies on People v. Ogilvie, 221 N.E.2d 265 (Ill. 1966), and In re Turner, 410 S.W.2d 639 (Tex.Crim.App. 1967). In *In re Turner,* that court said: "It does not appear that the Legislature intended that the 'right' expressed in Section 10 was to be limited to those individuals who are financially able to employ counsel of their own choice. There, of course, should be no difference in our criminal procedures stemming from differences in wealth." In *Smith* and *Luse,* we said: "The rich and the poor must be treated alike insofar as the right to counsel is concerned. This argument was approved by the Oregon Supreme Court in a lucid opinion, Perry v. Williard, 427 P.2d 1020 (Ore. 1967), and is not lightly to be cast aside. *We do not, however, choose to accept it in Nevada,* for reasons which to us seem sound. . . . A disparity in wealth between a probationer who can afford to retain counsel and one who cannot does not necessarily create an equal protection problem. Something more must be present. There must be a deviation from commonly held notions of fundamental fairness which creates an invidious discrimination. Thus, a court concerned with this problem must distinguish between the privilege of one to have counsel present and the constitutional right to enjoy the assistance of counsel. The transformation of privilege into right occurs when a critical stage in the criminal process is reached. . . . Nor does a disparity in wealth necessarily create an invidious discrimination and deny equal protection to probationers." (Emphasis added.)

In People v. Ogilvie, supra, the court, although discussing the question of whether an extradition proceeding was a critical stage of the criminal proceeding, did not decide that point, but found that legal expertise is necessary to consider and properly raise pertinent questions, and proceeded to judicially amend the uniform act to require that counsel be appointed to represent indigents. We do not choose to follow the construction placed on the uniform extradition act by the Illinois and Texas cases.

3.   Petitioner contends in this proceeding that the State of Washington has lost jurisdiction of him because he has been denied the right to a speedy trial. We hold he may not raise or seek determination of that issue in Nevada. People v. Hoy, 223 N.Y.S.2d 759 (Sup.Ct. 1961). He could not go into the evidence of his guilt or innocence in this state either before the governor or the courts. Ex parte Filtzer, 60 Nev. 109, 100 P.2d 942 (1940); nor complain in the asylum state that an indictment of the demanding state was invalid because based on evidence seized in violation of the Fourth Amendment. Woods v. Cronvich, 396 F.2d 142 (5th Cir. 1968). He could not raise the constitutionality of a statute of the demanding state in the asylum state, Ex parte Key, 301 S.W.2d 90 (Tex.App. 1957), nor seek consideration of the statute of limitations, Biddinger v. Commissioner, 245 U.S. 128 (1917).

The petition for a writ of habeas corpus is denied.

Zenoff, Batjer, Mowbray, and Thompson, JJ., concur.