**STATE of Missouri, Plaintiff-Respondent,**

v.

**Melvin PHILLIPS, Defendant-Appellant.**

**No. 54417.**

Supreme Court of Missouri,
Division No. 1.

July 14, 1969.

John C. Danforth, Atty. Gen., Jefferson City, Joe R. Ellis, Special Asst. Atty. Gen., Cassville, for respondent.

James E. Crowe, Kenneth V. Byrne, St. Louis, for defendant-appellant.

WELBORN, Commissioner.

Melvin Phillips filed a motion under Criminal Rule 27.26, V.A.M.R., in the St. Louis Circuit Court, to set aside action of that court revoking probation, granted him by that court when it sentenced him on plea of guilty for robbery in the first de-

gree. The trial court held a hearing on the motion and denied relief. On an earlier appeal, this court remanded the cause to the trial court for preparation of adequate findings of fact and conclusions of law, required by Criminal Rule 27.26(i), V.A.M. R. The trial court made findings, again denied relief and this appeal followed.

On April 29, 1965, Melvin Phillips, represented by counsel, pleaded guilty in the St. Louis Circuit Court, before Judge James Nangle, to robbery in the first degree with a dangerous and deadly weapon. On July 8, 1965, Phillips came before Judge Nangle for sentencing. A sentence of 10 years' imprisonment was imposed. The defendant was placed on probation for five years, under general conditions which included that he refrain from the violation of any state or federal penal laws. A special condition was stated as follows: "Melvin Phillips is to enter Roncalli Halfway House, Minneapolis, Minnesota, and remain there until authorized to leave by the Director of Roncalli Halfway House."

Immediately following the sentencing and probation, Phillips was taken to Minneapolis by a representative of Dismas House in St. Louis, and entered Roncalli House.

On March 5, 1966, Phillips was arrested in Minneapolis for aggravated assault. On April 16, 1966, he pleaded guilty to the charge. On May 10, 1966, the Hennepin County District Court sentenced Phillips "for a term according to the law" (five years maximum). However, the sentence was stayed for three years, during which time the defendant was to "be on probation with the department of court services of [the] court."

On March 23, 1966, Judge Nangle in St. Louis had issued an order that the sheriff of the City of St. Louis take Phillips into custody "and deliver him to the St. Louis City Jail where he is to be held for a probation hearing."

On May 12, 1966, at about 10:00 P.M., a St. Louis deputy sheriff appeared at the Hennepin County jail, with Judge Nangle's order, and Phillips was told that he was to be returned to Missouri. He left Minneapolis at about 5:00 A.M. the next morning and was returned to the St. Louis City jail. The return to St. Louis was not carried out through extradition proceedings.

On May 16, 1966, with no hearing and without the presence of Phillips, Judge Nangle entered an order revoking the probation and ordering Phillips committed to the Department of Corrections, to serve his 10-year sentence. On May 20, 1966, he was taken to the State Penitentiary in Jefferson City. The motion in this case was filed September 7, 1967.

The grounds for relief urged in the motion and asserted on the appeal are that appellant's probation should not have been revoked because the State of Missouri had no jurisdiction over him and no right to bring him into the State of Missouri in the manner which it did. He also attacks the revocation of his probation without counsel and a hearing as violation of state and federal constitutional guaranties. Finally, on the appeal, he asserts that the findings of the trial court are not yet sufficient to meet the requirements of Criminal Rule 27.26(i), V.A.M.R.

We note the last objection first, for, if the findings are inadequate, a further remand might be in order. We have examined the findings. Although they are not model in either form or content, they are sufficiently clear to provide the basis for the court's ruling and permit a proper review. There was little, if any, conflict in the evidence before the trial court and the questions presented are essentially of law.

On his first point, appellant's argument is that, in his return from Minnesota, the court proceeded as if appellant had been in Minnesota under the interstate compact between Missouri and Minnesota on probation and parole. § 549.310, RSMo 1959,

V.A.M.S. A copy of the compact was placed in evidence. It authorizes a "sending state" (Missouri) to permit a person placed on probation to reside in any other state which is a party to the compact ("receiving state"—Minnesota). When the probationer is not a resident of the "receiving state," that state must consent to the person's being sent there. "Before granting such permission, opportunity shall be granted to the receiving state to investigate the home and prospective employment of such person." By the terms of the compact, "All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of the states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state: * * *."

The thrust of appellant's argument is that he was not sent to Minnesota under the compact because no consent was sought from Minnesota before he went to Roncalli House. However, this argument overlooks what did occur. On July 9, 1965, the day after appellant was placed on probation and left for Minneapolis, the chief probation officer of the St. Louis Circuit Court wrote the Missouri Board of Probation and Parole, requesting that the Missouri Compact Administrator get in touch with his counterpart in Minnesota and arrange for Minnesota to accept supervision of Phillips. The Missouri administrator did write the Minnesota administrator. On September 9, 1965, the latter wrote the former: "Before proceeding further in this matter, we would like assurance from the St. Louis City Probation Department, and the sentencing court, that, should Subject violate and we request his return to your state as a probation violator, positive action [will] be taken by the court and the St. Louis City Probation Office." On November 3, 1965, a Minnesota parole and probation officer recommended that Phillips be accepted for supervision in Minnesota. On November 9, the Minnesota administrator notified the Missouri administrator that Minnesota gave its consent to Phillips residing in Minnesota while on probation. "Supervision is accepted with the condition that should he be involved in any serious violations, he will be returned to Missouri."

On March 23, 1966, the Minnesota administrator wrote the Missouri administrator, recommending that Phillips be returned to Missouri as soon as possible. Upon disposition of the assault charge, Missouri officials, acting in accordance with the compact, returned appellant to St. Louis.

From the foregoing, it is clear that, although prior consent was not given by Minnesota for Phillips to come there, such consent was granted. It is equally clear that Phillips was aware of his status. He testified that, immediately upon arriving at Roncalli House, he got in touch with a Minnesota probation officer. He testified that, when the Minnesota court placed him on probation on the assault charge, it did so on the basis of a pre-sentence investigation "which included a review of my Inter-State Parole Compact file."

The absence of prior consent by Minnesota does not vitiate the subsequent proceedings under the compact. Minnesota might have, in view of the absence of prior consent, refused to take supervision of appellant. However, it elected to do so and appellant was fully aware of his status. He cannot now complain of proceedings dealing with him in accordance with the compact. The case of Ex Parte Kabrich, 343 Mo. 196, 120 S.W.2d 42, relied upon by appellant, is a pre-compact case, of no significance as precedent in this case.

On his claim that revocation of his probation without a hearing and without his representation by counsel violates state and federal due process requirements, appellant relies heavily upon Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336.

That case did not involve the precise question here presented. The opinion of

the court states the question in Mempa as "the extent of the right to counsel *at the time of sentencing* where the sentencing has been deferred subject to probation." 389 U.S. 130, 88 S.Ct. 254. The case involved a procedure under the laws of the State of Washington whereby a judge before whom a convicted defendant appeared might place the defendant on probation and defer the imposition of sentence. Mempa had pleaded guilty to "joyriding." He was placed on probation for two years on condition that he first spend 30 days in jail and the imposition of sentence was deferred. A hearing was held some four months later. Mempa was not represented by counsel. The court revoked the probation and sentenced him to 10 years' imprisonment. Mempa subsequently sought habeas corpus on the grounds that he had not been afforded the right of counsel at the proceeding at which his probation was revoked and the sentence imposed. The Supreme Court considered the case as one involving denial of right to counsel at the time of sentencing and concluded that there had been an unconstitutional denial of right to counsel at such stage.

Appellant has cited no case in which Mempa has been held to apply to a revocation of probation subsequent to the sentencing process. Numerous cases from other jurisdictions have held Mempa inapplicable in such circumstances. Among such cases are: Rose v. Haskins, 6th Cir., 388 F.2d 91, cert. den. 392 U.S. 946, 88 S.Ct. 2300, 20 L.Ed.2d 1408; Eason v. Dickson, 9th Cir., 390 F.2d 585, cert. den. 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373; Sammons v. United States, S.D., Tex., 285 F. Supp. 100; Lawson v. Coiner, N.D., W.Va., 291 F.Supp. 79; State v. Allen (Me.), 235 A.2d 529, 531; John v. State, N.D., 160 N.W.2d 37; Petition of DuBois, Nev., 445 P.2d 354, 361 [7]; Wingo v. Lyons, Ky., 432 S.W.2d 821; People ex rel. Johnson v. Follette, 58 Misc.2d 474, 295 N.Y.S.2d 565, 571 [6–8].

Those cases point out that Mempa was concerned with protection of the rights of the defendant at the sentencing process. In this case, the sentencing of the appellant had been completed. There was no new sentence upon revocation of the probation. He was merely required to commence serving in confinement the sentence already imposed.

Texas cases have apparently reached the result which appellant here seeks. In Crawford v. State, Texas Cr.App., 435 S. W.2d 148, the court originally denied relief on the grounds that Mempa was not to be applied retroactively. On rehearing, subsequent to McConnell v. Rhay and Stiltner v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed. 2d 2, holding Mempa was to be applied retroactively, the Texas court held Mempa applicable in Crawford's case. 435 S.W.2d 155. A dissenting opinion from the original Crawford decision noted that Crawford's complaint related to revocation of probation which had been accorded him after "a plea of guilty on January 27, 1950; that the *imposition* of the sentence was suspended and the appellant granted probation; that subsequently on January 2, 1951, appellant's probation was revoked and for the first time sentence was imposed." 435 S.W.2d 150. The dissenting judge subsequently stated that " * * * in Texas the punishment assessed in probation cases is not deferred until time of revocation * * *." In Ex Parte Fuller, Texas Cr. App., 435 S.W.2d 515, Mempa was applied in a situation where sentence was *imposed* and execution of sentence suspended and the defendant placed on probation, which was subsequently revoked.

In Mempa, the court pointed out numerous legal rights which might be involved upon revocation of probation, under the Washington procedure. The court noted that, upon the sentencing, the judge was required to furnish the Board of Prison Terms with a recommendation as to the length of time the defendant should serve on the maximum sentence mandatorily imposed. An appeal from conviction on a plea of guilty could be taken only following imposition of sentence. The court

noted that absence of counsel at such time might result in loss of such right. A plea of guilty may be withdrawn at any time prior to sentencing. "An uncounseled defendant might very likely be unaware of this opportunity." 389 U.S. 136, 88 S.Ct. 258.

In Crawford v. State, supra, the dissenting judge pointed out the legal rights which might be lost if not exercised at the time of revocation of probation. Among them was the right to appeal on the propriety of the revocation, at which time the sufficiency of the motion to revoke might be attacked, if the question was raised below. In addition, the trial court may reduce the sentence originally imposed if defendant had served a certain portion of his period of probation. Finally, the court noted that in cases where imposition of sentence is suspended, the court on revoking probation might make the sentence cumulative with any other outstanding sentence. 435 S.W. 2d 152.

■ In Missouri, there is no right of appeal from a revocation of probation. See § 549.141, RSMo 1967 Cum.Supp. We do note that, by § 549.101, RSMo 1959, V.A.M. S., the court, upon revoking probation, " * * * in its discretion may order the allowance in mitigation of the sentence credit for all or for part of the time the defendant was upon probation or parole." This single incident is far short of the matters which might have been raised in Washington, upon revocation of probation or in Texas. We do not consider it sufficient to require either a hearing or the appointment of counsel.

■ Appellant argues that, in State v. Brantley, Mo.Sup., 353 S.W.2d 793, the court held that the Missouri statute (then § 549.254, RSMo 1959) required a hearing before revocation of probation. However, the statute considered in Brantley has been repealed. Laws of Missouri, 1963, p. 671, § A. The presently applicable statute, § 549.101, RSMo 1959, V.A.M.S., authorizes

the court "in its discretion with or without hearing, [to] order the probation or parole revoked and direct that the sentence theretofore imposed be commenced * * *." See State v. Small, Mo.Sup., 386 S.W.2d 379, 382 [8]. (The statute further authorizes the court to pronounce sentence in the event imposition of sentence was suspended. That was not the situation here, but the requirements of Mempa would appear to apply in such circumstances.)

As for the argument that revocation of probation so affects the rights of the defendant to bring constitutional guaranties into play, "The Supreme Court of the United States has held that the privilege of a probationer is not a right guaranteed by the Constitution, but 'comes as an act of grace to one convicted of a crime and may be coupled with such conditions in respect of its duration as Congress may impose.' In the absence of statutory provision, the probationer is not entitled to a hearing on revocation. Escoe v. Zerbst, 295 U.S. 490, 492, 493, 55 S.Ct. 818, 819, 79 L.Ed. 1566 (1935); Burns v. United States, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932). See also [United States] ex rel. Harris v. Ragen, 177 F.2d 303 (7th Cir. 1949)." Rose v. Haskins, 388 F.2d 95 [12].

We find the appellant's contentions without merit and the judgment must be affirmed.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., STORCKMAN, J., and HENLEY, Alternate Judge, concur.

HOLMAN, J., not sitting when cause was submitted.